**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**(Alexandria Division)**

| | |
|---|---|
| **ROBOTIC VISION TECHNOLOGIES LLC, a Nevada Limited Liability Company, and FREDERICK WEIDINGER, an individual,** )  )  )  )  )  ) | |
| **Plaintiffs,** ) | |
| **vs.** ) | **Case No. 1:11cv250 (TSE/TRJ)** |
| )  )  )  )  )  ) | |
| **ADIL SHAFI, an Individual,** | |
| **Defendant.** | |

**BRIEF IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS,
RULE 12(b)(3) MOTION TO CHANGE VENUE AND REQUEST FOR COSTS**

Michael S. Lieberman (VSB #20035)
Stacey R. Harris (VSB #65887)
**DiMuroGinsberg, PC**
908 King Street, Suite 200
Alexandria, Virginia  22314
Tel. (703) 684-4333
Fax. (703) 548-3181
E-mail: mlieberman@dimuro.com
E-mail: sharris@dimuro.com

James P. Murphy, *to be admitted pro hac vice*
BERRY MOORMAN, PC
535 Griswold, Suite 1900
313/223-1605 (direct)
313/496-1300 (fax)
E-mail: murph@berrymoorman.com

## I.  INTRODUCTION

This case, in a slightly different form, has already been dismissed by the U.S. District Court for the Eastern District of Michigan.  On June 3, 2010, the Honorable Victoria Roberts dismissed a complaint that mirrored the complaint here.

Robotic Vision Tech's predecessor, Braintech Inc., ("Braintech"), sued Defendant Adil Shafi in the Eastern District of Michigan on February 6, 2009.  A copy of the Complaint is annexed as Exhibit A (referred to herein as the "Michigan Case").  When it became apparent the Michigan Case would fail, RVT, upon an allegation that it had acquired the assets of Braintech, filed an identical lawsuit in Virginia.  This case duplicates the claims which were or could have been asserted in the Michigan Case.

Although different theories of recovery are pleaded, the principles of res judicata, collateral estoppel and related doctrines still serve as a bar to the assertion of the claims in this case because the underlying facts remain the same.  Weidinger's claims are also subject to dismissal for similar reasons.

The other plaintiff Frederick Weidinger was at one time, Braintech's Chief Executive Officer and Chairman of the Board of Directors.  After Braintech sued Mr. Shafi in Michigan, Shafi countersued by adding Weidinger to the Michigan lawsuit.  Weidinger was therefore subject to the compulsory counterclaim rule. Fed. R. Civ. P. 13.  The claims presently asserted by Weidinger were known to him while he was a party in the Michigan Case, but not asserted at that time.  The Michigan court  recently dismissed Weidinger from the Michigan Case on his motion for summary judgment.  That order, granting summary judgment, bars the claims Weidinger asserts here because under Rule 13, Weidinger should have raised the claim in the

Michigan Case.  This case vexatiously subjects Shafi to identical litigation following dismissal of the claims in the Michigan Case.  Mr. Shafi respectfully asks the Court  to award costs under 28 USC § 1927 and sanctions for this frivolous complaint.

In the event the Court declines to dismiss these claims on res judicata and collateral estoppel grounds, this Court should dismiss on the basis of improper venue.  The Non-Competition Agreement contains a forum selection clause that makes Michigan the forum for claims of breach.  Moreover, Shafi has no relationship in the Eastern District of Virginia with either plaintiff.  Mr. Shafi resides in Michigan.  RVT's predecessor filed suit on the same, now dismissed, claims in Michigan.  Even if there are valid claims in the complaint for disparagement or violation of a covenant not to compete, not a single act giving rise to the claims occurred in Virginia.  In fact, since the termination of his employment from Braintech, Mr. Shafi has not entered Virginia except to attend the deposition of Weidinger for the Michigan Case on September 13 and 14, 2010.

The complaint, in addition to being improvidently filed in Virginia, is facially deficient. The statute of limitations has expired on the claim for breach of fiduciary duty (Count II).  The defamation claim has not been pleaded with specificity as is required (Count IV).  The unfair competition claim fails to allege that Shafi has wrongly passed off the goods of another as his own goods  (Count V).  The expiration of the statute of limitations and the failure to plead with specificity, as the case may be, bars these claims as well.

Finally, if the Court finds that this case should not be dismissed, then it should be transferred to the Eastern District of Michigan for consolidation with the Michigan Case. Although Braintech's complaint was dismissed, Shafi's counterclaim remains pending. Shafi's

claim for breach of his Employment Agreement will go to trial on June 28, 2011.  Shafi's claim

under his Employment Agreement is inextricably related to RVT's claim for breach of the

related Non-Competition Agreement (Count I).  Shafi should not be forced to litigate this claim

piecemeal in two courthouses 500 miles apart.

### A.     The Transaction Or Occurrence in Both Cases is the Same

The "transaction or occurrence" giving rise to the claims in this case and the Michigan

Case is described in identical allegations found in both complaints.  "Prior to August 12, 2008,

Shafi was the President and sole owner of SHAFI Inc…."  *See* Complaint, ¶ 16; Michigan Case

Complaint, ¶ 7.  At the time, Shafi also owned a related company, SHAFI Innovation Inc. Both

of these companies were engaged in business to sell "simplified software solutions for vision

guided robots."  Compare Complaint, ¶ 17; with Michigan Case Complaint ¶ 8.

"On or about June 19, 2008, Braintech and Shafi entered into a non-binding confidential

letter of intent…setting forth Braintech's proposal to purchase all of outstanding stock" of both

of Shafi's companies.  Compare Complaint ¶ 18;with Michigan Case ¶ 9.  The letter of intent

included an advance down payment of $50,000.  "Shafi [allegedly] misappropriated $7500 from

these funds for his own personal use."  Compare Complaint ¶ 19; with Michigan Case Complaint

¶ 11.   Despite the alleged misappropriation of the advance, Shafi and Braintech closed a

transaction on August 12, 2008 wherein Braintech acquired all of the stock in SHAFI Inc. and

SHAFI Innovation Inc.  Compare Complaint,  ¶ 20; with Michigan Case Complaint  ¶ 19.  In

connection with that transaction, the parties executed a: (1) Share Purchase Agreement, (2)

Lock-Up Agreement, (3) Employment Agreement, (4) Non-Competition Agreement, (5) Letter

Agreement regarding indebtedness of SI and SII, and (6) Promissory Notes.   Compare Complaint,  ¶ 20, with Michigan Case complaint  ¶ 19.

"The purchase price consisted of 2,999,700 shares in capital stock of Braintech to be issued at closing and 1,000,000 to be issued upon the achievement of specified performance criteria."   Compare Complaint ¶ 24; with Michigan Case complaint ¶ 22.   As part of the transaction, Shafi became Chief Operating Officer of Braintech.  Compare Complaint ¶ 30; with Michigan Complaint ¶ 10.

Both complaints describe a series of alleged misrepresentations made by Shafi which Braintech (and now RVT, as Braintech's successor) relied upon in entering the transaction.  For example, Shafi Inc. software was not market-ready. Compare Complaint ¶ 33; with Michigan Case ¶ 60.  Shafi Inc., did not have accounts receivables or revenue.  Compare Complaint ¶ 33; with Michigan Case ¶¶ 59, 60 and 61.

In connection with Shafi's employment as the Chief Operating Officer (COO) of Braintech, both complaints allege that Shafi failed to fulfill his responsibilities as the  COO of Braintech.  Compare Complaint ¶ 45; with Michigan Complaint ¶ 73.  As a result, "[b]y letter dated November 19, 2008, while reserving their right to terminate for good cause" … "Braintech notified Shafi that he was being placed on administrative leave with pay and benefits." Compare Complaint  ¶ 46; with Michigan Complaint ¶ 74.   According to Braintech, and now RVT, "[s]hortly thereafter, Shafi began destroying company e-mails and other documents and deleting employee computer files, thus causing further harm to the company. Compare Complaint  ¶ 47; with Michigan Complaint ¶ 75. "As a result, on November 24, 2008, Braintech moved Shafi's

status to administrative leave without pay and benefits…" Compare Complaint ¶ 48; with Michigan Complaint ¶ 74.

Rather than detailing all the common allegations, Exhibit B to this brief contains comparison excerpts of all identical or similar allegations from both complaints.  However, one important allegation is new to the complaint in this case.  In this case, RVT alleges Braintech "thereby terminate[d] [Shafi] for good cause."  The omission of this allegation from the Michigan Complaint and inclusion in this case was intentional.  The Michigan Complaint sought rescission of all the contracts.  Taking action to terminate Shafi pursuant to the terms of the contract would have been inconsistent with the equitable remedy of rescission.  Therefore, the Michigan Case did not allege that Braintech terminated Shafi for good cause.  Now that Braintech is defunct, Plaintiffs are not confined to the strategy decision needed to pursue rescission claims in the Michigan Case.

The relief sought in either case is the only material difference.  In the Michigan Case, Braintech sought rescission of the transactions and contracts.  In this case, rather than rescission, Plaintiffs seek damages.  Nevertheless, all claims pleaded in this case should have been or could have been asserted in the Michigan Case.

**B.      Posture And Significant Events In The Michigan Case**

1.      Braintech, its Claims and their Dismissal

On June 3, 2010, the Honorable Victoria Roberts dismissed Braintech's complaint for failure to have an attorney file an appearance.  *See* Order dated June 3, 2010, annexed as Exhibit C.  The Michigan Case was filed by the Pepper Hamilton law firm.  Pepper Hamilton prosecuted the case until March 8, 2010, when it filed papers asking to withdraw from representation of

Braintech.  On April 7, 2010, Judge Roberts granted the withdrawal of Pepper Hamilton and ordered Braintech to appear through counsel no later than May 21, 2010.  By that time, Braintech was out of business, no longer operating and failed to have an attorney appear on its behalf in the Michigan Case.  Its complaint was therefore dismissed.

On May 24, 2010, RVT purportedly purchased all assets of Braintech.  Braintech is still an opposing party in the Michigan Case on Shafi's pending counterclaim, represented by insurance defense lawyers in name only.  There is no dispute that Braintech is an uncollectible defunct entity.  Insurance is paying for its defense but provides no indemnity.  Nonetheless, Mr. Shafi is proceeding with his claim.

2.     Weidinger Was a Counterclaim Defendant in the Michigan Case.

In the Michigan Case Mr. Shafi filed a counterclaim against Weidinger on April 22, 2009.  Weidinger responded with a 12(b)(6) motion.  In lieu of a hearing, Judge Roberts held a status conference.  At the conference, Shafi agreed to file an amended counterclaim.  On July 22, 2009, Shafi filed his Second Amended Counterclaim.  A copy is annexed as Exhibit D.   As a counterparty to Shafi's counterclaim, Weidinger was subject to the compulsory counterclaim rule.  Weidinger answered the counterclaim but asserted no claim against Shafi in the Michigan litigation.

The law firm of Dickinson Wright appeared in the Michigan case on behalf of Weidinger. *See* Exhibit E.   Specifically, Mr. McNeill and Ms. Alamo appeared from Dickinson Wright. These two lawyers have now appeared *pro hac vice* in this case.  Weidinger and his lawyers will contend that his claims in this case did not "arise" or accrue until after his answer was filed in the Michigan Case.  This contention is without merit (and this is known to Plaintiffs' lawyers) but

Plaintiffs' lawyers filed this case anyway, seeking to cause Shafi to incur attorneys' fees in litigation in two fora.

On April 24, 2011, the Hon. Victoria Roberts granted, in part, Braintech and Weidinger's joint motion for summary judgment.  All claims asserted by Shafi except Shafi's claims under the Employment Agreement (Counts I and II) were dismissed.   Weidinger is no longer a party in the Michigan Case.

### C.   Shafi's Remaining Claim in the Michigan Case

Count I of Shafi's counterclaim in the Michigan Case asks the Court to declare that Shafi was not terminated *for cause* under the terms of his Employment Contract.  In the Michigan Case Mr. Shafi asserts he was terminated without good cause (¶ 103) and is entitled to a severance benefit of $700,000 ("lump sum payment of the remaining 'base salary' of the term of the Employment Agreement (3 years), *subject to the execution of a release*).

Count II of Shafi's counterclaim seeks damages for breach of the Employment Agreement. Mr. Shafi seeks the severance benefit mentioned above and unpaid compensation earned through his termination date.  These claims implicate facts alleged in both complaints. After three months as COO of Braintech, Shafi was placed on administrative leave, first with pay, then without pay.  Compare Complaint ¶¶ 46, 48; with Complaint Michigan Case ¶¶ 74, 76. In other words, Braintech never "terminated" Shafi in accordance with the Employment Contract provisions.

Braintech elected not to terminate Shafi in order to preserve its claims for rescission. Termination in accordance with the terms of the Employment Agreement would have amounted to the exercise of a contractual remedy available to it under the Employment Agreement which

would have waived any claim for rescission.  Having lost that claim for failure to prosecute the

Michigan case, RVT as Braintech's successor has no right to elect the opposite remedy and file a

new suit in Braintech's name.  Setting aside the res judicata issue, the election of a "new"

remedy on the same facts in a new forum makes the Virginia lawsuit frivolous.

> **D.    The Relationship Between the Employment Agreement at Issue in the Michigan Case and the Non-Competition Agreement at Issue Here**

Shafi's Employment Agreement is intertwined with the Non-Competition Agreement.  A

copy of the Non-Competition Agreement is annexed as Exhibit F.  Both agreements were part of

the Share Purchase Agreement and both are subject to an integration clause found in the Share

Purchase Agreement which provided:

> Unless otherwise herein specifically provided, this Agreement, including the preamble, recitals, Schedules and Exhibits, and the documents and instruments and other agreements among the Parties as contemplated by were referred to herein constitute the entire agreement among the parties with respect to the subject matter hereof…

The Employment Agreement refers specifically to the Non-Competition Agreement.  A

copy of the Employment Agreement is annexed as Exhibit G.  Section 12 (g) entitles Shafi to a

"lump-sum payment" of the remainder of his base salary through the term of the agreement upon

his termination from Braintech.  Severance pay is conditioned upon Shafi executing a release as

provided in Section 12 (g).  The release, or lack thereof, is also at issue in the Michigan Case.

Upon his termination of employment, no release was ever tendered to Shafi.  Failure to tender a

release was consistent with Braintech's election of the rescission remedy.  Without severance

and a release, Braintech has no right to enforce the non-compete.  Section 12(g) states:

**For avoidance of doubt, if severance is paid to EXECUTIVE then the non—compete will be effective.**

[emphasis in original].   The claims in this case are based on the Non-Competition Agreement. Even if the non-compete is enforceable, this claim could have and should have been asserted in the Michigan Case.  Allowing this case to proceed permits Braintech to "split" its cause of action by electing rescission in Michigan, but pursuing Mr. Shafi for damages in Virginia.  Splitting the cause of action is merely intended to whipsaw Shafi on the eve of trial in the Michigan case and maliciously cause Shafi to incur expense to defend.

In filing this case here, Plaintiffs' lawyers also apparently overlooked a forum selection clause in the Non-Competition Agreement.

> The Parties agree that any legal action or other legal proceeding arising out of or relating to this Agreement may be brought in the state or federal court of proper jurisdiction in the State of Michigan (or in any court in which appeal from such courts may be taken).

Section 8(b) Non-Competition Agreement (Exhibit F).  Section 8 also provides that "any state and federal court in the State of Michigan *will be deemed to be a convenient forum*."  (Emphasis supplied.)  A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v.Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

Moreover, filing this case in Virginia, in light of the forum selection clause, is clear evidence of conduct proscribed by *28 U.S.C § 1927*.

E.  **Weidinger's Defamation Claims Arise from the Non-Competition Agreement and was a Compulsory Counterclaim in the Michigan Case**

The Non-Competition Agreement prohibits competition with a "Covered Party."

"Covered Party" includes Braintech and its "Affiliates" as provided in the agreement:

> THIS NON-COMPETITION AGREEMENT (this "Agreement") is being executed and delivered as of August 12, 2008 by ADIL SHAFI (the "Seller") in favor of, and for the benefit of **BRAINTECH**, INC., a Nevada Corporation ("Buyer"), SHAFI, INC., a Michigan corporation ("SI"), and SHAFI INNOVATION, INC., a Michigan corporation ("SII") (SI and SII are also referred to here in each as a "Company" and together, the "Companies") **and each of the Buyer's and each Company's present and future Affiliates (as defined below)**, successors and direct and indirect subsidiaries (including the Buyer and the Companies, collectively the "Covered Parties" and each a "Covered Party")[emphasis supplied].

RVT as Braintech's successor is a Covered Party.  Weidinger is an Affiliate and therefore also "Covered Party."  Affiliate is defined as:

> As used herein "Affiliate" means any person or entity that, directly or in directly, Controls, is Controlled by, or is under common Control with or of, such entity. The term "Control" (including, with correlative meaning, the terms "Controlled by" and "under common Control with"), as used with respect to any entity, means the possession, directly or in directly, of the power to direct or cause the direction of the management and policies of such entity, whether through the ownership of voting securities, by contract or otherwise.

Braintech's 2009 Annual Report showed Weidinger as the President, Chief Executive Officer, Chairman of the board of directors.  It also showed Weidinger owned over 31 percent of the voting securities of Braintech.  *See* Exhibit H.  Weidinger is undeniably an "Affiliate" and when made a party to the Michigan case, the claims Weidinger asserts in this case should have been asserted as a compulsory counterclaim.

**F.     The Claims in This Matter Were Known to Weidinger and Braintech/RVT at the time They Filed Responsive Pleadings**

Braintech filed the Michigan Case on February 6, 2009.  Shafi's initial counterclaim was filed on April 9, 2009.  Shafi filed his Second Amended Counterclaim against Braintech and Weidinger on July 22, 2010.  On August 12, 2010, Braintech and Weidinger answered Shafi's Second Amended Counterclaim.  Neither Braintech nor Weidinger asserted any claim against Shafi.  Before the 14 day period for Braintech and Weidinger to amend their responsive pleading expired their attorney informed Shafi of the claims now asserted in this matter.  Counsel for Braintech and Weidinger wrote:

> If Mr. Shafi has not resigned from Braintech's Board of Directors, effective November 2008, then Mr. Shafi's actions are, at a minimum, a breach of his fiduciary duties to Braintech, a breach of loyalty to Braintech, self-dealing, misappropriation of corporate opportunity, and improper competition with Braintech.

He specifically mentioned Advenovation, adding:

> Those actions include, but are not limited to, those taken by Mr. Shafi on behalf of this entity, Advenovation, Inc., which appears to compete with Braintech, Inc., and Mr. Shafi's disparagement of Braintech in the marketplace.

See letter dated August 21, 2009 from James D. VandeWyngearde, annexed as Exhibit I.

**G.     The Claims in the Virginia Case**

There are a few allegations in the Complaint here which go beyond the allegations in the Michigan Case.  Beginning on page 12 of the Complaint, Paragraphs 50 through 79 detail Shafi's alleged violation of the Non-Competition Agreement.  Here, Plaintiffs allege Shafi's new company Advenovation, is in direct competition with Braintech, now RVT.  For example, Paragraph 57 alleges:

11

> Shafi and his company, Advenovation, competed directly with Braintech prior to its public auction sale, and now compete directly with RVT, with respect to the provision of support and training services, software, and solutions for vision-guided robots and machine vision applications.

Plaintiffs claim Shafi is trading on "goodwill" belonging to Shafi Inc., and Shafi Innovation Inc., now owned by Braintech/RVT. Plaintiffs allege Shafi's association with Aptura Machine Vision Solutions is also competition which violates the Non-Competition Agreement. Finally, Plaintiffs seek damages for Shafi's alleged disparagement of Weidinger and Braintech in the marketplace for vision-guided robots and machine vision systems industries. *See* ¶ 73.

These claims arise directly from either a breach of the Share Purchase Agreement or the alleged violation of the Non-Competition Agreement. Count I claims Shafi breached the Share Purchase Agreement warranties. In the Michigan Case, Braintech alleged that it was fraudulently induced to enter into the Share Purchase Agreement. This claim has already been adjudicated by the Michigan Case.

Count II alleges breach of fiduciary duty. Plaintiffs allege Shafi's failure to perform employment duties under his Employment Agreement. This claim is the mirror image of Braintech's defense of the Michigan Case. This claim has been partially adjudicated in the Michigan Case and what has not been adjudicated, will be at trial in Detroit on June 28, 2011.

Count III claims breaches of the Non-Competition Agreement. RVT seeks to enforce the Non-Competition Agreement as the successor of Braintech. See paragraph 95. Both Braintech and Weidinger knew of these claims while the Michigan Case was pending but elected the remedy of rescission instead of pursuing these claims. As mentioned, had the court granted Braintech's complaint for rescission, a non-compete claim would have been extinguished. These

claims have been adjudicated by the Michigan Case.  RVT asserts no independent claim against Shafi.

Count IV claims defamation.  The Non-Competition Agreement specifically contained a non-disparagement provision.  The complaint concedes that defamatory statements breach the Non-Competition Agreement.  *See* ¶112.  Braintech and Weidinger knew of these claims while the Michigan Case was still in the pleading stage but elected to stand on their rescission claims.  This claim was  already adjudicated in the Michigan Case.

Finally, Count V claims common law unfair competition.  Here Plaintiffs complain Shafi is making use of goodwill associated with Shafi Inc. and Shafi Innovation Inc.  *See*  ¶¶ 116 and 125.  This claim arose from the same transaction as the Michigan Case, was known to Weidinger and Braintech at the pleading stage of the Michigan Case, and has already been adjudicated in the Michigan Case.

Equally important, unfair competition claims are sharply limited in Virginia to the instance where the goods of one dealer are "palmed off" as those of another.  An action for unfair competition in Virginia does not encompass any claims in the nature of "false advertising."

## II.  ARGUMENT

### Point 1

### THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL BAR ALL CLAIMS IN THIS CASE

**A.    The Dismissal of Braintech's Claims in the Michigan Case Should be Given Preclusive Effect**

On June 3, 2010, Judge Roberts dismissed Braintech's claim for failure to have counsel appear on its behalf.   The Order did not indicate whether dismissal was with or without prejudice.   Absent contrary language, Rule 41(b) treats it as dismissal on the merits and provides preclusive effect. Rule 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—*operates as an adjudication on the merits.*

Fed R. Civ. p. 41 (b) (emphasis added).

The Sixth Circuit interprets such orders as having preclusive effect.  In *Stelts v. Univ. Emergency Specialists, Inc.,* 20 F. App'x 448 (6th Cir. 2001), the district court dismissed a former employee's suit for lack of prosecution. The Sixth Circuit held the dismissal constituted a final judgment on the merits. *See also Bragg v. Flint Bd. of Educ.* 570 F.3d 775 (6th Cir. 2009). The Fourth Circuit will enforce the same result. "[A]n involuntary dismissal for violation of the rules or an order of the district court under *Fed R. Civ. Pro.* 41(b) … is an adjudication on the merits." *Orca Yachts, LLC v. Mollicam, Inc.,* 287 F.3d 316, 319 (4th Cir. 2002).  The dismissal of Braintech's complaint in the Michigan Case was an adjudication on the merits.

### B.    All Elements of Res Judicata and Collateral Estoppel are Present

"Under res judicata principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *Orca Yachts,* 287 F.3d at 318.  The doctrine of res judicata encompasses claim preclusion and issue preclusion. *In re Varat Enters., Inc.,* 81 F.3d 1310, 1315 (4th Cir 1996).  Claim preclusion

means that if the second case arises from the same cause of action as the first, the judgment in the first case bars litigation "not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *Varat*, 81 F.3d at 1315. Issue preclusion is more narrowly drawn. Issue preclusion bars subsequent litigation of legal and factual issues common in both actions "actually and necessarily determined by a court of competent jurisdiction in the first litigation." *Id.*

The Complaint *sub judice*, written by the lawyers who represent Weidinger in the Michigan Case is, essentially, a verbatim copy of the Michigan Complaint. RVT alleges it is the successor of Braintech, admits that it purchased Braintech's assets and only asserts claims derivative of Braintech. (Comp. ¶ 3) RVT is in "privity" with Braintech. The doctrine of claims preclusion accordingly bars RVT from asserting the same claim. *See Shoup v. Bell & Howard Co.*, 872 F.2d 1178, 1179 (4th Cir. 1988)(Plaintiffs barred from filing the same lawsuit in different federal courts to avoid an adverse determination of statute of limitations.).

Nor can RVT or Weidinger avail themselves of any argument that their claims are new or arose after the dismissal order in the Michigan Case. "To ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, origin, or motivation, whether they form a convenient trial unit, and whether there treatment as a unit conforms to the parties' expectations….'" *Waldman v. Vill. of Kiryas Joel,* 207 F.3d 105, 108 (2nd Cir. 2000). The "transaction or occurrence" test is the standard utilized by Virginia, and this court, in determining whether newly-added claims to a previously dismissed case are barred. *Dunston v. Huang*, 709 F. Supp.2d 414, 419 (E.D.Va 2010). In *Dunston*, this court held that the 2006 promulgation of Rule 1:6 of the Supreme Court of

Virginia clarified the standard for dismissal on grounds of claim preclusion and res judicata.[1] This Rule conclusively establishes that the "same-evidence" and "same-remedy" requirements have been discarded in Virginia.  The complaints in both cases rely upon a common nucleus of facts.  Both cases are about the transaction which occurred on August 12, 2008, the subsequent employment of Shafi by Braintech, his termination, the associated contracts and their enforcement.  Any further contention of newness of claims is cut off by their attorney's letter which outlined the very claims asserted in this Complaint immediately after filing a responsive pleading in the Michigan Case. (Exhibit I)

Even if the subsequent suit alleges "new and discreet" events, it is subject to res judicata. *Elkadrawy v. Vanguard Group Inc.,* 584 F.3d 169, 174 (3rd Cir. 2009).  "A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction *or a series of connected transactions,* out of which the action arose.'"  *Elkadrawy*, 584 F.3d at 173 (quoting *Restatement (Second) of Judgments, Sec 24(l)* (1982)).  The complaint in this matter focuses on Shafi's post-employment termination activities. But the claim does not arise without the August 12, 2008 sale of Shafi Inc., and Shafi Innovation Inc., to Braintech, the subject matter of the Michigan Case.

---

[1] Rule 1:6 provides: [a] party whose claim for relief arising from identified conduct, a *transaction*, or an *occurrence*, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and *regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended*, or the particular remedies sought.

If the plaintiff was not aware of the claim's existence at the time of the prior suit, it is nevertheless barred.  *See Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir. 1986). ("Actual knowledge of a potential claim is not a requirement for application of the rules of merger and bar, however, rather the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.")  Plaintiffs' knowledge of the claims is undisputable at the pleading stage of the Michigan Case.  With said knowledge plaintiff elected the remedy of rescission, and with that election lost any claims which could have been plead in the alternative.  By barring re-litigation of previous grounds for recovery, "res judicata encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."  *Brown v. Felsen* 442 U.S. 127, 131 (1979), *superseded on other grounds by statute*, Bankruptcy Reform Act of 1978, Pub. L. 95-598, § 401(a), 92 Stat. 2682.

**Point 2**

**THIS CASE IS SUBJECT TO DISMISSAL BECAUSE IT DUPLICATES THE MICHIGAN CASE**

RVT and Weidinger will contend that the missing element for the application of res judicata is the lack of a final judgment in the Michigan Case.  This puts form before substance. Allowing this case to proceed until a final judgment is entered in the Michigan Case would waste scarce judicial resources, render meaningless the underpinning rationales for claim and issue preclusion and expose Shafi to unnecessary attorneys fees.  "When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed."  *Oliney v. Gardner,* 771 F.2d 856, 859 (5th Cir. 1985) (emphasis omitted).

Most cases implicating duplicative proceeding dismissals arise when the second case is filed in the same court.  However, the rationale should be no different when the second case is filed in a different judicial district.  Indeed, the long standing general rule set down by the U. S. Supreme Court in 1894 is that a party has no right to maintain two distinct cases involving the same subject matter in the same court.  *United States v. Haytian Republic*, 154 U.S. 118, 123-24, 38 L. Ed. 930, 14 S. Ct. 992 (1894).

**Point 3**

**WEIDINGER IS COLLATERALLY ESTOPPED FROM ASSERTING ANY CLAIMS AGAINST SHAFI RELATING TO THE SAME TRANSACTION**

In the Michigan Case, Weidinger was sued as a counterparty on Shafi's counterclaim. Weidinger failed to assert any counterclaim against Shafi.  In this case, Weidinger asserts claims for defamation.  Rule 13(a) required Weidinger to assert any counterclaim he had arising out of the same transaction or occurrence in the Michigan Case.  Rule 13 (a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing parties claim…

Whether a counterclaim is compulsory in the Fourth Circuit is governed by *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.,* 538 F.2d 1048 (4th Cir. 1976).  Rule 13(a) "should be given a broad realistic interpretation to avoid a multiplicity of suits."  *Id.* at 1051.  The Court in *Sue & Sam* held that district courts should consider a four part test in deciding whether a counterclaim is compulsory, none of which is determinative: (1) are the issues of fact raised by the claim and counterclaim largely the same; (2) would res judicata bar a subsequent suit on counterclaim but

18

for the compulsory counterclaim rule; (3) will substantially the same evidence support or refute the claim and counterclaim; (4) is there a logical relation between claim and counterclaim?

Applying the four-part test in this matter leaves little doubt that Weidinger's claims at bar were the subject of a compulsory counterclaim in the Michigan Case.  First, these claims were known to Weidinger at the time Weidinger answered Shafi's Second Amended Counterclaim (Exhibit D; I).  There is an inextricable nexus between Shafi's Employment Contract claim and the opposing claim for enforcement of the Non-Competition Agreement.  The Non-Competition Agreement is only enforceable in favor of Weidinger (as an "Affiliate") if Shafi was terminated for cause or if severance was paid to Shafi when he was terminated without good cause.  Second, Rule 13(a) required Weidinger to assert this claim in the Michigan Case.  Third, the issue which will be litigated in both proceedings is whether or not Shafi was terminated for good cause.  Fourth, the connection between the claims is not only logical it is contractual.  Accordingly, Weidinger's personal claims are subject to dismissal because they should have been the subject of a compulsory counterclaim in the Michigan Case.  There is a clear and overwhelming logical and contractual relationship between both claims.  *Hospital Bldg. Co. v. Trs. of Rex Hosp.,* 86 F.RD. 694 (E.D N.C. 1980).

The test for determining whether a counterclaim is compulsory in the Sixth Circuit is similar and leads to the identical result. The Sixth Circuit applies the "logical relationship" test to determine whether a claim arises from the same transaction or occurrence.  "Under this test, we determine whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Sanders v. First Nat'l Bank & Trust Co. in Great Bend,* 936 F.2d 273, 277 (6th Cir. 1991).  Since the Non-

Competition Agreement contains a non-disparagement clause and Weidinger falls into the definition of an "Affiliate" any claims Weidinger has for non-disparagement arise from the same transaction or occurrence at issue in the Michigan Case. Therefore, Weidinger's claim must be dismissed for failure to state a claim under Rule 12(b)(6).

## Point 4

### THIS CASE MUST BE DISMISSED FOR IMPROPER VENUE

### A.      Venue in Michigan is Stipulated in the Non-Competition Agreement

The very contract at issue in this matter places venue squarely in Michigan. Plaintiffs intentionally overlooked this provision. At a recent status conference with Judge Roberts, Mr. McNeill was informed by the court that the dismissal order dismissing Braintech's complaint would preclude re-filing the claims in the Sixth Circuit. Mr. McNeill responded that he believed the law in the Fourth Circuit was different. There is no record of this discussion, but it demonstrates that Mr. McNeill and his client were "shopping" for a more favorable venue by filing this case here. In so doing, Mr. McNeill has unreasonably "multiplied" the proceedings with little regard for the signing requirements under Rule 11.

### B.      Venue is Improper in Any Event

Rule 12 (b)(3) provides that this case may be dismissed for improper venue. To the extent that plaintiffs contend that the "transaction or occurrence" is different in this case than the Michigan Case, that contention is based solely on Shafi's activities following his termination from Braintech. Under 28 USC 1391(a), in a diversity case venue is proper if the defendant resides in the judicial district, or "substantial parts of the events or omissions giving rise to the claim occurred in the judicial district," or  there is no other appropriate venue and the court has

personal jurisdiction over the defendant. 28 U.S.C. § 1391(a) (2010).   In determining if substantial events support venue, a court should look to the entire sequence of events underlying the claim. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).   After the defendant challenges venue under Fed. R. Civ. P. 12(b)(3), the plaintiff bears the burden of establishing proper venue. *Bartholomew v. Va. Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979).

Venue must be considered in light of RVT's predecessor's concession that venue in the Eastern District of Michigan was appropriate when the claims were initially filed.   Shafi is a resident of Brighton, Michigan, located in the Eastern District of Michigan.

In *Prod. Group Int'l Inc. v. Goldman*, 337 F. Supp. 2d 788 (E.D. Va. 2004), this Court construed the *Mitrano* holding.   Defendant Goldman was employed as an event producer by plaintiff Production Group. Production Group was located in Virginia and Goldman resided in the state of Florida.   While employed at Production Group, Goldman spent substantial amounts of time in the Virginia offices working on plaintiff's Red Bull account and had frequent contact with other employees located in the Virginia offices.   Goldman subsequently left Production Group, joined a competitor and successfully solicited the Red Bull account for the competitor. Plaintiff Production Group sued Goldman in the Eastern District of Virginia and this Court upheld venue here.

In this case, Shafi has no relationship whatsoever with either RVT or Weidinger.   The claims asserted in this case (although related to Michigan Case) are unrelated to the period of Shafi's employment with Braintech.   Rather, the claims here solely relate to conduct allegedly committed by Shafi more than three months following the termination of his employment. Although an argument can be made that but for Shafi's employment with Braintech, the Non-

Competition Agreement would not have come into existence and, therefore, the violation of the non-compete may form the "substantial" nexus for venue in the Eastern District of Virginia, a closer examination of the complaint refutes this argument. *See also* Declaration of Adil Shafi, attesting to his lack of contact with Virginia.

The focus of the claims for unfair competition relate to Shafi's alleged use of corporate goodwill which belonged to Shafi Inc., and Shafi Innovation Inc. *See* ¶¶122 and 125 of Plaintiffs complaint.  RVT now claims ownership of said corporate goodwill.  RVT is not a true successor, but rather the successful bidder at an auction sale of Braintech's assets.  Moreover, following Braintech's acquisition of Shafi Inc., and Shafi Innovation Inc., Braintech never took possession of any of those assets.

Prior to the transaction, Shafi Inc., and Shafi Innovation Inc., were Michigan corporations, which maintained their principal place of business in Michigan and had no relationship whatsoever with the state of Virginia.  Although the state of Michigan corporate records show that both Shafi Inc., and Shafi Innovation Inc., have been dissolved for failure to update the required filings, their last office of record is still located in Michigan.  Copies of the Michigan Department Licensing and Regulatory Affairs records for Shafi Inc., and Shafi Innovation Inc., are annexed as Exhibit J.  All of the business records of Shafi Inc., and Shafi Innovation Inc., are still located in the state of Michigan, in possession of his counsel (Mr. Murphy) where they have been produced for inspection in the Michigan Case.  Shafi Inc.'s intellectual property included software trademarked under the name RELIABOT.  The U.S. Patent and Trademark Office record shows that the registration was cancelled, not transferred to Braintech and is still located in Michigan. See Exhibit K.

Moreover, Braintech no longer exists.  It has no offices anywhere, let alone within the Commonwealth of Virginia.  In this case, RVT merely seeks enforcement of a contract right of a company which no longer exists.  The mere fact that RVT is located in Virginia is the only basis for venue in Virginia.  Had RVT been located in some other state with which Shafi had no relationship, that mere fact would not support venue in some other federal judicial district. When the facts of this case are analyzed under *Mitrano,* there is no legally justifiable basis to respect Plaintiffs' choice of venue in the Eastern District of Virginia.  Therefore, this case must be dismissed for improper venue.

**Point 5**

**THE IMPROVIDENTLY FILED COMPLAINT CONTAINS COUNTS THAT EITHER FAIL TO STATE A CAUSE OF ACTION UNDER VIRGINIA LAW OR ARE BARRED BY THE STATUE OF LIMITATIONS.**

Independently from the doctrine of res judicata, collateral estoppel and claim preclusion, several of the counts fail to state a cause of action because they are facially stale or insufficiently stated.

**A.  The Statute of Limitations has Expired for the Breach of Fiduciary Duties Claim (Count II)**

Under Count II – (Breach of Fiduciary Duty) RVT's breach of fiduciary duty claim is stale. In Virginia, the statute of limitations for breach of fiduciary duty is two years and the acts complained of happened in 2008, more than two years from the filing of the Complaint. Va. Code § 8.01-248.  The statute of limitations begins to run when the "right to bring such an action has accrued." *Id.*  The cause of action accrues on the date of the breach. *See Professionals I, Inc. v. Pathak*, 47 Va. Cir. 476, 480 (1998); *Michael v. Michael*, 43 Va. Cir. 150, 153 (1997).

The cause of action accrues on the date injury is sustained and not when the resulting damage is discovered. Va. Code § 8.01-230. Virginia law strictly construes when the statute of

limitations begins to run.  Where an injury, no matter how slight, is sustained by the wrongful act of another, the statute of limitations runs against all damages resulting from the wrongful act, even those damages which may not arise until a future date.  *Starnes v. Cayouette*, 244 Va. 202, 206, 419 S.E.2d 669, 670 (1992).  The statute began to run in November 2008, when Shafi was terminated by Braintech.

### B.  The Defamation Claim is Inadequately Pled

Under Count IV (Defamation), the Complaint fails to state with particularity the statements that constituted defamation and identify the speaker and the circumstances of the publication.  A Virginia defamation action requires "that the exact words spoken or written must be set out in the declaration . . . that is, [the pleading] must purport to give the exact words. Words equivalent of or similar import are not sufficient." *Gibson v. Boy Scouts of America*, 360 F. Supp. 2d 776, 782 (E.D. Va. 2005); *Fed. Land Bank of Baltimore v. Birchfield,* 173 Va. 200, 215, 3 S.E.2d 405, 410 (1939).

In *Iqbal* and *Twombly*, the Supreme Court made clear that to comply with Fed R. Civ. P. 8, a plaintiff must provide more than mere labels and conclusions and for a complaint to achieve facial plausibility, it must contain sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged.  The defamation allegation in Count IV does not permit this Court, or the defendant, to make this critical inference of plausibility because it lacks the exact words that plaintiff claims are defamatory, and it fails to provide the time when the words were purportedly uttered.  Under *Twombly* and *Iqbal's* pleading

requirements[2], it would seem necessary that a plaintiff at least include both the exact words purportedly constituting defamation and the time when it was uttered to ensure that a cause of action for defamation is at least factually plausible, rather than an "unadorned, the-defendant-unlawfully-harmed-me accusation" condemned in *Iqbal, supra* at 1949.  Indeed, in March 2011, two courts in this District affirmed that a plaintiff needed to recite in the Complaint the exact words that are alleged to constitute defamation. *See Association for Supervision and Curriculum Development, Inc. v. International Council for Education Reform and Development, Inc.*, 2011 U.S. Dist. LEXIS 26783 (March 14, 2011)(Judge Lee); *Kidd v. TA Operating*, LLC., 2010 U.S. Dist LEXIS 25659 (March 18, 2011)(Judge Hudson).

Providing specifics about a purportedly defamatory statement, such as when the alleged statement was made, identifies whether any such statement is barred by the applicable one-year limitations period for a defamation claim. *Va. Code Ann. § 8.01-247.1* (2008) ("Every action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues.").

### C.  Count V Fails to State a Claim for Unfair Competition

Virginia recognizes only a very narrow cause of action for unfair competition, limiting such a claim to the instance when the goods of one dealer are wrongly passed off as those of another. *Monoflo Int'l, Inc. v. Sahm*, 726 F. Supp. 121, 127 (E.D. Va. 1989)("Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition, i.e.,

---

[2] While Defendant Shafi recognizes that in *Hatfill v. The New York Times Co*., 416 F.3d 320,329 (4th Cir. 2005) the Fourth Circuit held that a defamation complaint is governed by Fed. R. Civ. P. 8 and not by Fed. R. Civ. P. 9(b)'s heightened pleading requirement, it should be noted that *Hatfill* was decided before *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

deception, by means of which goods of one dealer are palmed off as those of another,")(*citing*

*Benjamin T. Crump Co. v. J. L. Lindsay, Inc.,* 130 Va. 144, 160, 107 S.E. 679, 684 (1921)*).* The

Plaintiffs' attempt to conjure an unfair competition claim in Count V fails because it does not

assert that any: (1) goods (2) have been wrongly passed off as those of another.   Rather,

Plaintiffs claim that the experience that Shafi advertises on behalf of Advenovation was actually

based on Reliabot, SI, and SII's alleged commercial success.   (Complaint ¶¶ 117 to 121.)   The

nature of Plaintiff's claim does not meet the narrow definition of unfair competition in Virginia.

Accordingly, Counts II, IV and V fail to state a claim upon which relief may be granted.

These claims are subject to dismissal under Rule 12(b)(6).

## Point 6

## THIS CASE SHOULD BE TRANSFERRED TO THE E.D. MICHIGAN UNDER 28 USC § 1404

This court may, if it deems appropriate, decide to transfer this case to Michigan.   The

Eastern District of Michigan is the appropriate forum for this case.   This is supported by a

number of reasons.   The decision to transfer venue is within the reviewing court's discretion.

*Prod. Group*, 337 F. Supp. 2d at 798.   Although Plaintiffs' choice of this forum is accorded a

favorable presumption, this may be overcome when private and public factors clearly point to an

alternative forum.   *Id.* This case is unique.   Weidinger is the man behind both Braintech and

RVT.   He is represented by the same counsel in both Michigan and Virginia.   Weidinger and his

lawyers filed the first case on this subject matter in Michigan.   Weidinger and his lawyers then

made business decisions to end the existence of Braintech, create RVT and acquire the assets of

the now defunct Braintech.   The Michigan case happened to be in the way and in order to

maintain the corporate formalities of both entities, Braintech's complaint in the Michigan Case

suffered the same fate as Braintech.  They both came to an end.  Weidinger and his lawyers

know that there is little chance that Judge Roberts would have sympathy for the business

decisions that led to the end of Braintech and allow RVT to "resurrect" Braintech's claims from

the dismissal order.  Hence the bad faith filing here.  Nevertheless, if the Court is not inclined to

dismiss this case outright, the bad faith, vexatious nature of filing this case here overcomes any

presumption in favor of Plaintiffs chosen venue under *Production Group, supra.*  This case

should be transferred to Michigan.

**Point 7**

**THE COURT SHOULD AWARD COSTS UNDER 28 USC § 1927**

By filing this case in this District, Plaintiffs, and their lawyers have blatantly disregarded

the orderly process of justice.  There are no objective grounds to argue that the prior dismissal of

the claims in the Michigan Case was not an adjudication on the merits.  Even if application of the

principles of claim and issue preclusion were not abundantly and overwhelmingly clear in this

case, the forum and venue selection clause in the very contract for which enforcement is sought

leaves no room to argue venue is appropriate anywhere but Michigan.  It appears that the only

goal served by filing this case was to force Shafi to expend substantial and unnecessary resources

of time and money to defend this case while the Michigan Case proceeds to trial.

This Court possesses the inherent power to sanction a party, the party's attorney or both

"when a party deceives a court or abuses the process at a level that is utterly inconsistent with the

orderly administration of justice or undermines the integrity of the [judicial] process."  *United*

*States v. Shaffer Equip. Co.,* 11 F.3d 450, 462 (4th Cir. 1993).  Commencement of litigation in

bad faith is an abuse of judicial process.  *Silvestri v. GMC*, 271 F.3d 583,590 (4th Cir. 2001).

Plaintiffs and their counsel knew of the claims asserted here at the same time they filed

responsive pleadings in the Michigan Case almost two years ago.  Under any objective standard,

this case was filed vexatiously and in bad faith.  An award of costs and attorneys' fees is

therefore appropriate.

## III. CONCLUSION

Dismissal is warranted in this case under Rule 12.  An award of costs is also warranted.

Barring dismissal and costs, this case should be transferred to the Eastern District of Michigan at

Plaintiffs' expense.

Dated:  May 23, 2011                          Respectfully submitted,


_____/s/_____
Michael S. Lieberman (VSB #20035)
Stacey R. Harris (VSB #65887)
*Counsel for Defendant Adil Shafi*
**DiMuroGinsberg, PC**
908 King Street, Suite 200
Alexandria, Virginia  22314
(703) 684-4333 (telephone)
(703) 548-3181 (facsimile)
E-mail: mlieberman@dimuro.com
E-mail: sharris@dimuro.com


James P. Murphy, *to be admitted pro hac vice*
BERRY MOORMAN, PC
535 Griswold, Suite 1900
313/223-1605 (direct)
313/496-1300 (fax)
E-mail: murph@berrymoorman.com
*Counsel for Defendant Adil Shafi*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system, which will send notification of such filing (NEF) to: the following:

H. Jonathan Redway (Va. Bar. No. 42189)
jredway@dicksonwright.com
DICKINSON WRIGHT PLLC
1875 Eye St., N.W., Suite 1200
Washington, D.C.  20006
Tel: 202.659.6946
Fax: 202.659.1559

AND that I further caused a courtesy copy to be e-mailed to:

Thomas G. McNeill, Esq.
TMcNeill@dicksinsonwright.com
Michelle L. Alamo, Esq.
MAlamo@dicksinsonwright.com
DICKSINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit Michigan 48226
Tel. 313.223.3500
Fax. 313.2223.3598

_____/s/_____
Stacey R. Harris
