**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

ROBOTIC VISION TECHNOLOGIES LLC, a
Nevada Limited Liability Company, and
FREDERICK WEIDINGER, an Individual,          Case No.: 1:11cv250 (TSE/TRJ)

          Plaintiffs,

v.

ADIL SHAFI, an Individual,

          Defendant.

_____/

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND FOR COSTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.         INTRODUCTION ................................................................................. 1

II.        STATEMENT OF FACTS ................................................................. 2

    **A.**     Braintech's 2008 Acquisition of Shafi's Companies. .................................... 2

    **B.**     The Michigan Action -- Braintech's Claim for Rescission and Shafi's Counterclaims for Damages.................................................................................................................. 3

    **C.**     The Michigan Action -- The Foreclosure of Braintech and the Dismissal of its Complaint........................................................................................................ 5

    **D.**     The Michigan Action -- Beginning June 28, 2011, Shafi Commences Trial on His Two Remaining Counterclaims............................................................................. 6

    **E.**     RVT and Weidinger Filed the Virginia Complaint Asserting Post-Transaction Claims that are Separate and Distinct from Braintech's Rescission Claim in the Michigan Action. ..... 7

    **F.**     The Michigan Court Rejected Shafi's Motion to Stay the Michigan Action and Ordered Shafi to File His Motion in the Virginia Action "As Soon As Possible." ................................. 8

III.      ARGUMENT ......................................................................................... 10

    **A.**     Venue is Proper in this Court and Shafi Has Not, and Cannot, Overcome the Well-Established Presumption in Favor of Plaintiffs' Choice of Forum........................................... 10

        **1.**   Venue is Proper in This Court Under 28 U.S.C.       § 1391(a)(2)......................... 10

        **2.**   The Venue Provision in Shafi's Employment Agreement Does Not Render Venue Improper in This Court. ....................................................................................... 12

        **3.**   Shafi Has Not Sustained His Burden Under 28 U.S.C. § 1404(a) that the *Forum Non-Conveniens* Factors "Strongly Favor" the Eastern District of Michigan....................... 13

    **B.**     Plaintiffs' Claims in this Action Are Not Precluded by the Court's Dismissal of Braintech's Equitable Claim for Rescission in the Michigan Action. ...................................... 18

    **C.**     Plaintiffs' Claims in This Action Are Not Compulsory Counterclaims to Shafi's Claims In the Michigan Action. ...................................................................................... 22

        **1.**   Weidinger's Virginia Claims Bear No Legal Relationship to Shafi's Michigan Claims Against Him. ...................................................................................... 23

**2.** RVT's Virginia Claims Bear No Legal Relationship to Shafi's Michigan Claims Against Braintech ........................................................................................................ 24

**D.** Shafi's Substantive Arguments Seeking Dismissal of Plaintiffs' Claims Fail. .............. 26

**E.** Shafi's Motion for Sanctions Should be Denied............................................................ 29

IV.    CONCLUSION .......................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Adell Broadcasting v. Apex Media Sale*, 269 Mich. App. 6; 708 N.W.2d 778 (2005) ................. 20

*Board Trustees v. Sullivant Ave. Props., LLC,* 508 F. Supp. 2d 473 (E.D. Va. 2007) ................ 15

*Brubaker v. City of Richmond,* 943 F.2d 1363 (4th Cir. 1991) .................................................... 29

*Clairol, Inc. v. Boston Disc. Ctr., Inc.*, 608 F.2d 1114 (6th Cir. 1979) ...................................... 28

*Collins v. Straight, Inc.,* 748 F.2d 916 (4th Cir. 1984) ............................................................... 14

*Debauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) ................................................................ 29

*Dunston v. Huang,* 709 F. Supp. 2d 414 (E.D. Va. 1004) ............................................................ 18

*Dynamis, Inc. v. Dynamis.com*, 2011 U.S. Dist. LEXIS 49171 (E.D. Va. Apr. 27, 2011) ........... 27

*Gibson v. Boy Scouts of Am.,* 360 F. Supp. 2d 776 (E.D. Va. 2005) ........................................... 27

*Good Housekeeping Shop v Smitter*, 254 Mich. 592 (1931) ........................................................ 28

*Heritage Optical Ctr., Inc. v. Levine*, 137 Mich. App. 793 (1984) ............................................. 28

*Insteel Indus. v. Costanza Constr. Co*., 276 F. Supp. 2d 479 (E.D. Va. 2003) ............................ 28

*Intracomm, Inc. v. Bae Systems Information Tech., Inc*., 492 F.3d 285 (4th Cir. 2007) .......... 1, 13

*Jones v. R.S. Jones & Assoc.*, 246 Va. 3 (1993) ......................................................................... 28

*JTH Tax, Inc. v. Lee,* 482 F. Supp. 2d 731 (E.D. Va. 2007) .................................................. passim

*Kidd v. TA Operating, LLC,* 2010 U.S. Dist. LEXIS 25659 (Mar. 8, 2011) ............................... 27

*Lash v. Allstate Insurance Company*, 210 Mich. App. 98, 102; 532 N.W.2d 869 (1995) ............ 21

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 S. Ct. 1907, 32 L.Ed.2d 513 (1972) ........ 13

*McMullen v. Joldersma*, 174 Mich. App. 207; 435 N.W.2d 428 (1988) ..................................... 20

*Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004) ................................................................... 10, 11

*Nossen v. Hoy*, 750 F. Supp. 740 (E.D. Va. 1990) ...................................................................... 14

*Production Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788 (E.D. Va. 2004) ................. passim

*Royal Ins. v. Lynnhaven Marine Boatel, Inc*., 216 F. Supp. 2d 562 (E.D. Va. 2002) .................. 29

*Shoup v. Bell & Howell Co.,* 872 F.2d 1178 (4th Cir. 1989) ......................................... 18

*Sue & Sam Mfg. Co. v. B-L-S Constr. Co.,* 538 F.2d 1048 (4th Cir. 1976) .................................. 22

*Young-Henderson v. Spartanburg Area Mental Health Ctr.,* 945 F.2d 770 (4th Cir. 1991) ........ 18

**Statutes**

28 U.S.C. § 1391 ................................................................................................. 1, 10

28 U.S.C. § 1927 ............................................................................................. 2, 29, 30

**Rules**

Fed.R.Civ.P 12 ......................................................................................................... 1

Fed.R.Civ.P. 13 .................................................................................................... passim

Fed.R.Civ.P. 18 ......................................................................................................... 1

**Treatises**

4-18 Moore's Federal Practice – Civil § 18.02 ........................................................... 21

# I.  INTRODUCTION

In all respects, Plaintiffs properly filed this action in this Court and properly have pleaded all of their claims.

Under 28 U.S.C. § 1391(a)(2), venue is proper because Plaintiffs have alleged facts establishing that a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district. Plaintiffs thus have made a *prima facie* showing of proper venue, which Defendant has not, and cannot, overcome.  Moreover, Defendant improperly seeks dismissal, or transfer, based upon a contractual stipulation that an action "***may*** be brought" in Michigan (emphasis added), which, under *Intracomm, Inc. v. Bae Systems Information Tech., Inc.*, 492 F.3d 285, 290 (4th Cir. 2007), is merely permissive and not mandatory. Dismissal is not appropriate under Fed.R.Civ.P 12(b)(3).

Under 28 U.S.C. § 1404(a), Defendant has failed to meet his burden for the transfer of venue to Michigan under this Court's four-factor test articulated in *JTH Tax, Inc. v. Lee,* 482 F. Supp. 2d 731 (E.D. Va. 2007), a case which Defendant does not cite in his papers. The strong presumption in favor of Plaintiffs' choice of forum should not be supplanted here because Defendant ***has not*** met his burden of demonstrating that the balance of convenience among the parties and witnesses "strongly favors" Michigan.

With respect to his motion under Fed.R.Civ.P. 12(b)(6), Defendant has not established that federal principles of *res judicata* bar ***any*** of Plaintiffs' four claims. Under the permissive joinder rules of Fed.R.Civ.P. 18(a) and 20(a), non-party Braintech, Inc. (which in 2010 sold to Plaintiff RVT substantially all of its assets, including its legal claims) was not obligated to assert in its 2008 Complaint in Michigan the claims which RVT has asserted in its 2011 Complaint filed in this Court. Under Fed.R.Civ.P. 13(a), Plaintiffs' claims in this action ***do not*** constitute compulsory counterclaims that were required to be asserted in the earlier filed, but now largely

disposed of, Michigan case. And Plaintiffs properly have pleaded all of the necessary elements, and the factual predicate required by *Iqbal* and *Twombley*, for each of their four claims.

Finally, Plaintiffs submit that Defendant's shrill hyperbole employed throughout is brief is intended to mask, or draw this Court's attention from, the deficiencies in his own legal arguments.  Under 28 U.S.C. § 1927, Defendants' motion for costs is without merit and should be denied.

Plaintiffs request that this Court deny Defendant's motion(s) in all respects.

## II.  STATEMENT OF FACTS

### A.    Braintech's 2008 Acquisition of Shafi's Companies.

Plaintiff Robotic VISION Technologies, LLC ("RVT") designs and sells software and services for vision-guided robotics.  First Am. Compl. ("Complaint"), ¶ 2.[1]  Plaintiff Rick Weidinger is the CEO of RVT.  *Id.* ¶ 4.

On May 24, 2010, RVT purchased at public auction all of the assets of Braintech, Inc., a public company which prior to its failure and liquidation also participated in the vision-guided robotics industry.  *Id.* ¶¶ 3, 15.[2]  The Braintech assets which RVT acquired include all claims then possessed by Braintech against its former COO and Director, Defendant Adil Shafi ("Shafi"). *Id.* ¶ 3.

Shafi is the former president and sole shareholder of SHAFI, Inc., ("SI") and SHAFI Innovation, Inc. ("SII"), which designed and sold software solutions and services for vision-guided robotics.  *Id.* ¶¶ 16-17.  Today, Shafi is the president, CEO and majority shareholder of

---

[1] On June 6, 2011, as a matter of right under Fed.R.Civ.P. 15(a)(1)(B), RVT and Weidinger filed an Amended Complaint withdrawing the breach of fiduciary duty claim, Count II to the original Complaint.

[2] Rick Weidinger was an officer, director, and shareholder of Braintech, which was a factor in proceeding with a sale of assets by public auction rather than by private conveyance.

Advenovation, Inc., which also participates in the vision-guided robotics industry in competition against RVT. *Id.* ¶¶ 6-8, 50-56.

The genesis of the Michigan Action and the preamble for this Virginia Action is Braintech's 2008 acquisition of Shafi's predecessor companies, SI and SII. Specifically, on August 12, 2008, after months of negotiation, Braintech and Shafi executed a Stock Purchase Agreement ("SPA") and five related agreements, by which Braintech acquired 100% of the stock of SI and 80% of the stock of SII. *Id.* ¶¶ 18, 20,-22. [3] As part of the transaction, Shafi became the Chief Operating Officer of Braintech and a director of the company, and SI and SII became Braintech subsidiaries. *Id.* ¶ 18. As consideration for the transaction, Shafi received 2,999,700 shares in the capital stock of Braintech to be issued at closing and an 1,000,000 shares to be issued upon the achievement of specified performance criteria. *Id.* ¶ 24.

Braintech's acquisition of SI and SII was a complete failure as a result of numerous misrepresentations by Shafi. *Id.* ¶¶ 25-43. Three months after the deal closed, on November 24, 2008 Braintech terminated Shafi's employment for good cause. *Id.* ¶ 48.

**B.      The Michigan Action -- Braintech's Claim for Rescission and Shafi's Counterclaims for Damages.**

Two months after terminating Shafi's employment, on February 6, 2009, Braintech commenced an action in the U.S. District Court for the Eastern District of Michigan (the "Michigan Action") seeking equitable rescission of the transaction, including a return of the consideration conveyed. *See* Mot. Dismiss, Ex. A, Michigan Complaint.

In response, over the course of four months, Shafi filed an original, amended and second amended counterclaims against Braintech and adding Weidinger as an additional counterclaim

---

[3] In addition to the SPA, the parties executed: (1) a Lock-Up Agreement, (2) an Employment Agreement between Braintech and Shafi, (3) a Non-Competition Agreement between Braintech and Shafi, (4) a Letter Regarding Indebtedness of SI and SII, and (5) a Promissory Note from SI and SII. *Id.* ¶ 20.

3

(or third party) defendant. *See* Exs. 2, 3, 4. In the Second Amended Counterclaim filed on July 22, 2009 (Ex. 4), Shafi asserted a total of seven counterclaims in the Michigan Action:

- **Breach of Employment Agreement Claims (Counts I & II) Against Braintech Only :** Counts I and II are asserted solely against Braintech and relate to Shafi's claim that Braintech breached his Employment Agreement by terminating him without good cause and failing to pay him his contractual severance pay under the Agreement. In Count I, Shafi seeks a declaratory judgment that Braintech breached the Employment Agreement and in Count II, Shafi seeks monetary damages for such alleged breach.

- **Fraud/Fraud in the Inducement (Count III) Against Braintech and Weidinger:** In Count III, Shafi alleged that Braintech and Weidinger fraudulently induced him into entering the Share Purchase Agreement. Important for purposes of Shafi's motion to dismiss, Shafi's fraud claim was premised on *precontractual representations allegedly made by Weidinger on behalf of Braintech*. Instead of seeking recission of the Share Purchase Agreement, however, Shafi sought monetary damages.

- **Securities Fraud Claims (Counts IV & V) Against Braintech and Weidinger:** In Counts IV and V, Shafi asserted both federal and state securities fraud claims against Braintech. Shafi's securities fraud claims are essentially a repeat of his fraud/fraudulent inducement claims, with the added assertion that Braintech and Weidinger either made fraudulent *precontractual representations* or failed to disclose material information *during contractual negotiations* in order to dupe him into selling his companies in exchange for worthless stock.

- **Conversion (Count VI) against Braintech and Weidinger**: Count VI asserted a claim for conversion against Braintech and Weidinger. Like his fraud and securities fraud claims, Shafi asserts in his conversion claim that Weidinger made allegedly fraudulent *precontractual representations and omissions* in order to dupe him into selling his companies to Braintech without compensating him.

- **Unjust Enrichment (Count VII) against Braintech and Weidinger:** Finally, Count VII asserts an unjust enrichment claim, again based on Shafi's contention that Weidinger made allegedly fraudulent *precontractual representations and omissions* in order to dupe him into selling his companies to Braintech without compensating him.

As the preceding illustrates, in the Michigan Action, Shafi's counterclaims were based entirely upon (a) his Employment Agreement with Braintech, and (b) his assertion that Weidinger had made allegedly fraudulent *precontractual representations* on behalf of Braintech in order to induce the SPA in exchange for what he deemed "worthless stock" in Braintech.

4

C.      **The Michigan Action -- The Foreclosure of Braintech and
the Dismissal of its Complaint.**

In early 2010, as a result of the deal-gone-bad with Shafi, Braintech failed and began winding down through public auction foreclosure. By then, Braintech did not have officers or employees (all had resigned) and Braintech did not have the resources to pay litigation counsel. As a result, on March 8, 2010, Braintech's counsel, the Pepper Hamilton firm, filed an emergency motion to withdraw. *See* Ex. 5. On April 7, 2010, the Court granted that motion and temporarily stayed the action to provide Braintech an opportunity to retain counsel.

Braintech previously had purchased from Chubb an Employment Practices Liability ("EPL") insurance policy. During a teleconference with the Court on May 18, 2010, counsel retained by Chubb, attorneys Susan Koval and Anne Widlak of the Nemeth Burwell firm, informed the court that they would be appearing as counsel for Braintech *only in relation to the defense of Shafi's counterclaims against the company*. *See* Ex. 6, May 19, 2010 Order. The EPL policy, however, only provides for defense of the claims (subject to a reservation of rights) -- there is no coverage for any other loss, including any potential judgment against Braintech.

During that same May 18, 2010 teleconference, attorney Geoffrey Greeves of the Pillsbury Winthrop firm advised the Court that he would be appearing as defense counsel for Weidinger personally *only in relation to the defense of Shafi's third-party claims. Id.*

At the same time, Braintech's outside foreclosure counsel informed the Court that the Company's CEO and General Counsel had resigned some months prior, which left Braintech with no in-house corporate counsel and no outside counsel to prosecute the Complaint for rescission.

On May 24, 2010, all of Braintech's assets were sold to RVT at public auction.

On June 3, 2010, without the appearance of successor counsel, the federal court in Michigan court dismissed defunct Braintech's complaint, leaving only Shafi's Second Amended Counterclaims against Braintech and Weidinger.  *See* Mot. Dismiss, Ex. C, 6/3/2010 Order. The Order dismissing Braintech's Complaint does not include "with prejudice" language.

        **D.**      **The Michigan Action -- Beginning June 28, 2011, Shafi Commences Trial on His Two Remaining Counterclaims.**

In the Michigan Action, the parties completed discovery and on November 19, 2010, Braintech and Weidinger filed a joint motion for Summary Judgment on all of Shafi's counterclaims.  Briefing was completed on that motion on January 24, 2011.

On March 23, 2011, the Court convened a settlement conference which did not resolve the Michigan Action. Thereafter, on April 5, 2011, the Court entered an order dismissing Weidinger entirely from the case and dismissing all claims against Braintech, except for the two breach of employment claims. Ex. 7. The Court is scheduled to convene a final pretrial conference on June 17, with a jury trial scheduled to commence June 28.

It is curious that Shafi continues to prosecute the remaining employment claims against the defunct Braintech, when its counsel, James Murphy of Detroit-based Berry Moorman firm, has acknowledged orally and in writing (including in the instant Motion to Dismiss) that Braintech has no insurance coverage for any judgment.  In commenting upon this empty gesture, Shafi's counsel wryly comments:   "Nonetheless, Mr. Shafi is proceeding with his claim."   Br. Supp. Mot. Dismiss at 6.

E.   **RVT and Weidinger Filed the Virginia Complaint Asserting Post-Transaction Claims that are Separate and Distinct from Braintech's Rescission Claim in the Michigan Action.**

As the Michigan Action approached the 12th hour, on March 14, 2011, RVT and Weidinger, represented by Dickinson Wright, filed this Virginia Action.[4] Not unexpectedly, the ***background*** factual allegations in RVT and Weidinger's Virginia Complaint are substantially similar to the background facts alleged in Braintech's Michigan Complaint -- such as the allegations regarding the parties' respective businesses, general background regarding the SPA and related agreements and general background regarding Shafi's termination from employment at Braintech. Motion to Dismiss, Exhibit B, ¶¶ 1-9, 12, 22 and 25. It is equally clear, however, that the legal claims asserted in the Virginia Action are separate and distinct from those asserted in the Michigan Action, Braintech's rescission claim and Shafi's counterclaims.

In the Virginia Action, RVT and Weidinger now allege four claims:

Count I, Breach of Contract (the SPA), a *legal claim seeking monetary damages* for Shafi's post-transaction breach of representations and warranties. Unlike the original Michigan Action, Count I is legal, not equitable, in nature, seeks monetary damages, and perhaps most importantly, affirms the existence of the SPA, unlike Braintech's original complaint which sought rescission of the SPA.

Count II, Breach of the Non-Competition Agreement. *The Non-Competition Agreement is not, and has never been, at issue in the Michigan Action.* Moreover, the majority of the conduct alleged in support of this claim occurred after Shafi's employment with Braintech ended and does not involve any alleged misrepresentations by Weidinger (such as form the basis of Shafi's counterclaims in Michigan), nor does it involve any alleged misrepresentations by Shafi related to the SPA or breach of his employment duties under the Employment Agreement

Count III, Defamation, which has absolutely no relation to Shafi's claims in the Michigan Action and is based on statements made by Shafi after his employment with Braintech ended. Unlike Shafi's Michigan claims, Count IV does not

---

[4] Previously, on February 28, 2011, the Dickinson Wright firm filed an appearance as Michigan co-counsel to the Pillsbury firm for Counter-Defendant Weidinger only.

involve any alleged misrepresentations by Weidinger, nor does it involve any alleged misrepresentations by Shafi related to the SPA or breach of his employment duties under the Employment Agreement.

<u>Count IV, Unfair Competition</u>, based upon Shafi's conduct after Braintech terminated his employment and in relation to his new company, Advenovation, and his work for Aptura. Like the other Virginia claims, this claim has no relation to Shafi's claims based on breach of his employment agreement or the allegedly fraudulent pre-contractual statements made by Weidinger that form the basis of Shafi's dismissed counterclaims. Likewise, this claim has no relation to Braintech's original claim for rescission of the SPA.

*See* First Am. Complaint.

At the time Plaintiffs filed the Virginia Action, with the exception of one discrete discovery item, discovery had been closed for almost five months in the Michigan Action, summary judgment motions had been filed and pending for almost four months, a settlement conference was scheduled for nine days later (March 23, 2011), the then scheduled final pretrial conference was less than a month away (April 20, 2011), and trial was scheduled to begin in six weeks (May 10, 2011). *See* Ex. 8, Scheduling Order (Phase II).

**F.    The Michigan Court Rejected Shafi's Motion to Stay the Michigan Action and Ordered Shafi to File His Motion in the Virginia Action "As Soon As Possible."**

On March 14, 2011, Plaintiffs filed the Virginia Action, and by the next day Shafi's Michigan counsel had secured a copy. Ex. 9, 3/15/2011 email from James P. Murphy to Thomas G. McNeill. Shafi immediately began to purposefully evade service of the Virginia summons and complaint. While evading service, on March 16, 2011, Shafi filed a motion to stay the Michigan Action, purportedly "to enable Shafi to devote his resources to seeking dismissal and/or change of venue" of the Virginia case to Michigan. *See* Ex. 10, Motion to Stay, E.D. Mich. D.I. 92, at 1. At the time Shafi filed his motion to stay the Michigan Action, trial was scheduled for May 10, 2011.

A week later, on March 23, 2011, the parties appeared for the scheduled settlement conference in the Michigan Action.  During the settlement conference, the parties discussed that if the Virginia Action were transferred to Michigan, it could be joined with the remaining Michigan claims for trial, but that additional discovery would be necessary.  *See* Ex. 11, 3/30/2011 Order, E.D. Mich. D.I. 100.  It was further discussed during the settlement conference that, assuming Shafi promptly filed his anticipated motion in the Virginia Action and given this Court's "rocket docket," a decision likely would be forthcoming in a matter of weeks.  Accordingly, it was agreed and ordered by the Court at the settlement conference that:

1.      Counsel for Shafi will *accept* service in the Virginia case for his client;

2.      He will, *as soon as possible*, file a Motion To Dismiss Or To Transfer Venue of that case to this Court;

3.      If venue is transferred, the two cases will be combined for all purposes.

*Id.* at 2.

The federal court in Michigan issued a new scheduling order setting trial for June 28, 2011, in the event that Shafi did not file his anticipated motion in this Court or that the case was not transferred to Michigan.  *See* Ex. 12, 3/30/2011 Order, E.D. Mich. D.I. 101.

Contrary to his representations and the provisions of the Court's March 30 2011 Order, Shafi's counsel did not "accept" service on behalf of his client, which would have required Shafi to appear and file his motion to dismiss within twenty-one days.  Rather, Shafi "waived" service to take advantage of the extended sixty-day response period.  Ex. 13, 3/24/2011 Letter from Mr. Murphy to Mr. McNeill.  Shafi then waited the entire sixty-days before finally filing the motion to dismiss or to transfer venue on May 23, 2011.

During this time, on April 5, 2011, the Michigan court entered an order granting Plaintiffs' motion for summary judgment on all of Shafi's counterclaims except Counts I and II

related to breach of his Employment Agreement against Braintech only.  *See* Ex. 7, 4/5/2011 Order.  Trial starts in the Michigan Action in just over three weeks, on June 28, 2011.

### III. ARGUMENT

**A.** **Venue is Proper in this Court and Shafi Has Not, and Cannot, Overcome the Well-Established Presumption in Favor of Plaintiffs' Choice of Forum.**

**1. Venue is Proper in This Court Under 28 U.S.C. § 1391(a)(2).**

In response to Shafi's motion to dismiss for improper venue, Plaintiffs need only make a *prima facie* showing of proper venue.  *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue.").  Under 28 U.S.C. § 1391(a)(2), "it is possible for venue to be proper in more than one judicial district."  *Mitrano,* 377 F.3d at 405. And, in determining whether events or omissions are sufficiently substantial to support venue under 28 U.S.C. § 1391(a)(2), "a court should not focus only on those matters that are in dispute or that directly led to the filing of the action," but rather, "should review the entire sequence of events underlying the claim."  *Id.* (finding that plaintiff attorney's legal work in district may be sufficient for venue purposes despite fact that contract at issue was negotiated, formed, partially performed, and breached in Massachusetts) (internal quotations omitted).  Finally, in addressing the factual support for venue, any conflicts must be resolved in favor of Plaintiffs as the non-movants.  *See Production Group Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 791 n.1 (E.D. Va. 2004).

Under 28 U.S.C. § 1391(a)(2), Plaintiffs have made a *prima facie* showing that venue is proper in this District because Plaintiffs have alleged facts establishing that a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.  *See* Ex.1, First

Am. Compl. ¶ 12.  Shafi has conducted business activities in Northern Virginia that directly relate to the claims in this matter.  *See id.*  He was physically present in this District to personally negotiate the various agreements at issue in this case, including the SPA and the Non-Competition Agreement.  *See id.*  In doing so, he met and negotiated with Weidinger at his home in Great Falls, Virginia.  *See id.*  Shafi was an officer and director of Braintech, which had its principal place of business located in MacLean, Virginia.  *See id.*  As an employee of Braintech, Shafi traveled to, and worked and stayed overnight in Great Falls and McLean.  Shafi also received payments and benefits from Braintech initiated from Virginia.  *See id.*

Moreover, Shafi is competing with a Virginia-based company, RVT, in direct breach of his non-competition agreement.  *See id.* ¶¶ 81-92.  And, Shafi has defamed and disparaged both a Virginia-based company, RVT, and a Virginia resident, Weidinger, thereby causing damage in Virginia.  *See id.* ¶¶ 94-102.  Shafi is also unfairly competing with a Virginia-based company, RVT, and using a Virginia-based company's goodwill in relation to his new company, Advenovation.[5]  *Id.* ¶¶ 104-117.

Shafi focuses too narrowly, and improperly so, on his "contacts" with this District and the fact that he resides in Michigan.  Minimum contacts analysis is the touchstone for personal jurisdiction, which Shafi does not contest.  As espoused by *Mitrano* and *Production Group International,* the test for venue is whether a substantial part of the events or omissions giving rise to the claims occurred within this District.  Indeed, in *Mitrano,* it was undisputed that the defendant resided outside the District, in Massachusetts; but the Fourth Circuit nonetheless determined that venue could still be proper in Virginia if a substantial part of the events giving

---

[5]  At page 22 of his brief, Shafi essentially challenges RVT's standing to assert the claims it acquired from Braintech in the purchase of assets.  Shafi does not explain the relevance of this assertion to any of his arguments concerning venue.

rise to the claims occurred in Virginia. *See Mitrano*, 377 F.3d at 402-07.  Likewise, in

*Production Group International,* the defendant resided outside the District, in Florida; but the

court nonetheless found venue proper in Virginia under § 1391(a)(2) where the defendant was

employed by a Virginia company, had communications with coworkers in Virginia, made visits

to the company's headquarters in Virginia, and the confidential information giving rise to the

plaintiff's claims originated, in part, in Virginia through defendant's communications with his

Virginia co-workers. *Production Group Int'l*, 337 F. Supp. 2d at 791, 798-99.

The fact that SI and SII were Michigan corporations that allegedly had no contact with

Virginia *prior to the transaction at issue* is irrelevant because Plaintiffs' claims do not involve

*pre-transaction conduct* by either Shafi or his companies.

In summary, Shafi's motion to dismiss for improper venue should be denied because

Plaintiffs have made a *prima facie* showing that venue is proper in this District under §

1391(a)(2).

### 2.  The Venue Provision in Shafi's Employment Agreement Does Not Render Venue Improper in This Court.

Contrary to Shafi's contention, the venue provision in his Non-Competition Agreement

does not render venue in this District improper.  The venue provision in the Non-Competition

Agreement merely provides that a cause of action arising out of or related to the Non-

Competition Agreement *may* be brought in Michigan, that the parties agree Michigan is *a*

convenient forum, and that the parties agree not to contest either personal jurisdiction or venue in

Michigan:

> (b)     The parties agrees [sic] that any legal action or other legal
> proceeding arising out of or relating to this Agreement ***may*** be brought in the state
> or federal court of proper jurisdiction in the State of Michigan or in any court in
> which appeal from such courts may be taken.  The parties:

>           (i)      agree that any state and federal court in the State of
> Michigan will be deemed to be *a* convenient forum;  . . . .

Mot. Dismiss, Ex. F, Non-Competition Agreement § 8(b) (emphasis added).

"A general maxim interpreting forum-selection clauses is that an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion." *Intracomm, Inc. v. Bae Systems Information Tech., Inc.*, 492 F.3d 285, 290 (4th Cir. 2007) (finding forum-selection clause that provided "either party *shall be free to* pursue its right at law or equity in a court of competent jurisdiction in Fairfax County, Virginia" was permissive in nature and did not *require* that all actions be brought in Fairfax County, Virginia) (emphasis in original).[6]  Because the venue provision in the Non-Competition Agreement is permissive in nature, it does not render venue in this District improper, nor does it overcome the well-established presumption in favor of honoring the Plaintiffs' choice of forum.

### 3.  Shafi Has Not Sustained His Burden Under 28 U.S. C. § 1404(a) that the *Forum Non*-Conveniens Factors "Strongly Favor" the Eastern District of Michigan.

The decision whether to transfer venue is committed to the court's sound discretion.  *See Production Group, Inc.*, 337 F. Supp. 2d at 799.  In determining whether to grant a motion under section 1404(a), a court considers the following four factors: "(1) the plaintiff's [initial] choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the

---

[6]   Unlike the permissive venue provision in Shafi's Non-Competition Agreement and the permissive forum-selection clause at issue in *Intracomm*, the forum-selection clause at issue in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 S. Ct. 1907, 32 L.Ed.2d 513 (1972), cited on page 9 of Shafi's brief in support of his motion to dismiss, expressly *required* that "[a]ny dispute arising *must* be treated before the London Court of Justice."  *See id.* at 2 (emphasis added).  Given its mandatory language, the Supreme Court held that absent a clear showing "that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," the clause should be enforced.  *Id.* at 15.  The forum-selection clause at issue in *M/S Bremen* is patently distinguishable from the clause at issue in this matter.

interest of justice." *JTH Tax, Inc. v. Lee,* 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (internal quotation omitted) (alteration in original).   In applying these factors, there is "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public factors clearly point toward trial in the alternative forum." *Production Group, Inc.*, 337 F. Supp. 2d at 799 (internal quotation omitted); *see also Collins v. Straight, Inc.,* 748 F.2d 916, 921 (4th Cir. 1984) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").   As the party seeking a discretionary transfer under § 1404(a), Shafi "bears the burden of demonstrating that the balance of convenience among the parties and witnesses is strongly in favor of the forum to which transfer is sought," *Nossen v. Hoy*, 750 F. Supp. 740, 742 (E.D. Va. 1990) (internal citations omitted), and "must also demonstrate that transfer does more than merely 'shift the inconvenience' to the other party," *JTH Tax*, 482 F. Supp. 2d at 736.

Shafi has not met his burden. Shafi asserts that Michigan is a more convenient forum because he lives in Michigan and because all of the business records related to SI and SII are located in Michigan.   Shafi does no more than propose shifting his inconvenience in a Virginia forum to Plaintiffs' inconvenience in a Michigan forum.   As a matter of law, the mere shifting of inconvenience is insufficient to overcome Plaintiffs' choice of forum.

This Court has noted that "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *JTH Tax*, 482 F. Supp. 2d at 738.   "Therefore, even though a defendant may be inconvenienced by litigating an action in a plaintiff's home district, a transfer is not appropriate where it would likely only serve to 'shift the balance of inconvenience from the plaintiff to the defendant.  When such a shift occurs, it is not a proper basis for transfer." *Id.   See also Production Group, Inc.*, 337 F. Supp. 2d at 799 (finding that

14

transfer of venue was not warranted merely where litigating in another forum would be more convenient and less costly to the defendant as it would "merely shift the balance of inconvenience in defendant's favor") (internal quotation omitted); *see also Board Trustees v. Sullivant Ave. Props., LLC,* 508 F. Supp. 2d 473, 478 (E.D. Va. 2007) ("[T]ransfer is inappropriate when the result merely serves to shift the balance of inconvenience from one party's witnesses to the other's.").

To the extent that Shafi argues that RVT and Weidinger are in a better position economically to appear in Michigan than he is to appear in Virginia, that argument simply is not relevant to proper transfer analysis. *See JTH Tax*, 482 F. Supp. 2d at 738 ("JTH's status as a corporation with sufficient resources to defend in a foreign forum is not a factor that this court considers in a transfer analysis.").

Shafi's argument that his documents are located in Michigan is likewise unavailing. Shafi admits the companies' business records are in his counsel's possession because they were all collected and put into eighty-three boxes in order to be produced during discovery in the Michigan Action. *See* Ex. 14, Shafi Dep. Tr., Vol. I, at 51-53.  Any burden associated with shipping the eighty-three boxes of business records to Shafi's Virginia counsel, if necessary, would be minimal at best and certainly does not justify transferring venue to Michigan. *See Production Group, Inc.*, 337 F. Supp. 2d at 800 (rejecting argument that burden of having to transfer documents to chosen forum justified a transfer of venue).[7]

Shafi has presented no evidence, by affidavit or otherwise, that litigating in this forum would significantly inconvenience any non-party witness, which is a crucial factor in a transfer

---

[7] Shafi provides no explanation, rationale or authority that would make relevant to a *forum non conveniens* argument that the U.S. Patent and Trademark Office has cancelled Braintech's Reliabot trademark. Br. Supp. Mot. Dismiss at 22.

analysis. As courts routinely have recognized, "[t]his factor is often the most important in balancing for a potential § 1404(a) transfer, but the influence of this factor may not be assessed without reliable information identifying the witnesses involved and specifically describing their testimony." *JTH Tax*, 482 F. Supp. 2d at 736 (internal citation omitted).   Particularized information supporting this factor, "typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give to a claim of inconvenience.   Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight.   By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.* (quotation omitted); *see also Production Group, Inc.*, 337 F. Supp. 2d at 799-800 (noting that with respect to convenience of non-party witnesses, it is the defendant's burden "to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience" and finding that failure to do so weighed against transfer).   Shafi has clearly failed to sustain his burden with respect to this factor -- he has not identified any third party witnesses for whom Michigan would be more convenient than Virginia.

The only other basis Shafi asserts in support of a transfer of venue is his self-serving and unsupported assertions that the federal court in Michigan is unlikely to permit Plaintiffs to proceed on the claims asserted in this Court and his own biased perception that Plaintiffs filed this case in this District for some nefarious purpose.[8]   Plaintiffs' bald assertions, however, are not

---

[8] At page 20 of his supporting brief, Shafi claims that Weidinger's counsel made a statement at the March 23 Michigan settlement conference, concerning Fourth Circuit precedent, that in point of fact was not made. Beyond the patent falsity of that attribution, it is indeed surprising that in support of an ill-supported motion to transfer venue Shafi's counsel would violate Federal Rule of Evidence 408 by misrepresenting communications made during a settlement conference.

only unfounded and incorrect, but also insufficient to overcome the presumption in favor of Plaintiffs' choice of forum or to transfer venue to Michigan "for convenience of the parties."

The interests of justice favor denying Shafi's motion to transfer venue of this action to Michigan. Such transfer undoubtedly would only serve to unnecessarily delay the trial in the Michigan Action.  "The 'interest of justice' category is designedly broad" and is meant to encompass "all those factors bearing on transfer that are unrelated to the other three factors." *JTH Tax*, 432 F. Supp. 2d at 738.  "Such factors include the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment."  *Id.*  In applying this factor, however, "docket conditions generally receive minor consideration" and as this court has held, cannot be the primary reason for retaining or transferring venue.  *See id.*  Similarly, the potential need to apply another state's law rarely justifies a transfer as district courts sitting in diversity are often called upon to do so.  *See id.*

The interest of justice favors denying a transfer of venue in this case because Shafi willfully disobeyed the Michigan court's direction to file his motion "as soon as possible."  The Court should not countenance Shafi's gamesmanship in utilizing his long delayed motion to transfer venue as a means to further delay final adjudication or resolution of the Michigan Action.  Contrary to the order of the federal court in Michigan, and the representations by Shafi's Michigan counsel that he intended to promptly file a motion to dismiss or transfer the Virginia Action, Shafi waited the entire sixty days before filing that motion. There simply is no justification for Shafi's outright defiance of the Michigan court's order and purposeful delay in filing his motion.  It would appear that Shafi proceeded in this fashion with the ulterior motive of

further delaying the Michigan Action (which presents no practical avenue for recovery) or to improperly leverage some result there.

In summary, venue is proper under 28 U.S.C. §1391(a)(2) and Shafi's wan arguments for transfer of venue fall woefully short of meeting his burden under 28 U.S.C. §1404(a).

**B.**     **Plaintiffs' Claims in this Action Are Not Precluded by the Court's Dismissal of Braintech's Equitable Claim for Rescission in the Michigan Action.**

Shafi is wrong in his assertion that RVT and Weidinger's claims in this action are subject to *res judicata* by virtue of the dismissal of Braintech's original Michigan complaint for rescission.  As an important preliminary matter, Shafi's reliance on the *Dunston v. Huang,* 709 F. Supp. 2d 414 (E.D. Va. 1004), and the Supreme Court of Virginia's promulgation of Rule 1:6 is misplaced.  Br. Supp. Mot. Dismiss at 15-16.  It is well settled that Federal common law controls the application of *res judicata* in this action.[9]  *See Shoup v. Bell & Howell Co.,* 872 F.2d 1178, 1179 (4th Cir. 1989). "It is well-established in this circuit that the application of *res judicata* requires a showing of the following three elements:   "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits."   *Young-Henderson v. Spartanburg Area Mental Health Ctr.,* 945 F.2d 770, 773 (4th Cir. 1991).

Shafi's failure to meet the second prong of the *res judicata* test -- identity of the causes of action between the two lawsuits -- is dispositive of the issue here.[10]  When analyzing *res*

---

[9]  Not only does federal law apply, but *Dunston* did not involve issues of *res judicata,* but rather, interpretation of the term "action" in Virginia's nonsuit tolling provision for medical malpractice actions.  Because the court was interpreting a Virginia statute, it was appropriate for it to look to Virginia law defining the same term.

[10]  As to the first prong, a judgment on the merits in the first action, Plaintiffs contend that dismissal of Braintech's Michigan Complaint was based upon the unique procedural circumstances that do not serve as an adjudication on the merits.  Because Shafi fails to

*judicata*, the focus must be on Braintech's claims against Shafi, as asserted in the Michigan Action and as asserted by RVT in the Virginia Action. As discussed above in Section II.A *supra*, Braintech's claims in the Michigan Action sought rescission of the SPA based upon Shafi's material *precontractual* misrepresentations and then subsequent material breaches of the SPA by Shafi. The sole relief sought by Braintech in the Michigan Action was a declaratory judgment rescinding the SPA and returning all consideration paid by Braintech to Shafi in relation to the SPA. Braintech did not assert or pursue a claim for monetary damages in the Michigan Action.

In the Virginia Action, it is beyond purview that Plaintiffs' conduct after Braintech terminated his employment serves as the factual predicate for Plaintiffs' claims for breach of the Non-Competition Agreement (Count II), Defamation (Count III) and Unfair Competition (Count IV). These claims **do not** involve issues that were, or could have been, litigated as part of Braintech's original equitable claim for rescission. These claims are based upon Shafi's post Braintech employment at his new company, Advenovation, starting in February 2009, and work as a sales representative for Aptura starting in 2010. All of this conduct post-dated Braintech's filing of the original complaint in Michigan.

Moreover, none of the issues surrounding Shafi's post-employment conduct were even remotely relevant to Braintech's original complaint for recission, which was based on Shafi's

---

otherwise meet the federal *res judicata* test, it is unnecessary for this Court to reach the "judgment on the merits" prong. However, if this Court determines that inquiry to be material here, Plaintiffs request the opportunity to seek clarification from the federal court in Michigan regarding the proper treatment to be accorded to that Court's order. Indeed, Shafi essentially has done just that by filing a motion *in limine* in the Michigan Action seeking to preclude Braintech from raising as a defense his failed performance as a Director, officer and employee. In that motion, Shafi has argued that the dismissal of Braintech's Complaint should be given *res judicata* effect to ban that defense. *See* Ex. 15, Shafi Amended Motion *in Limine*.

fraudulent precontractual representations and then subsequent breaches of various representations, warranties, and duties set forth in the SPA and related agreements during his employment by Braintech. There simply is no "identity of the cause of actions" in the Michigan Action (for rescission of the SPA due to fraudulent inducement and material breaches of the SPA) compared to the Virginia Action (subsequent post Braintech employment conduct that constitutes breach of the Non-Competition Agreement, defamation and unfair competition). There is a stark disconnect between the Michigan Action and Virginia Action -- both as to the nature of the causes of action and temporally (in Michigan, before Braintech terminated Shafi's employment; and in Virginia, after Braintech terminated his employment).

Material factual and legal distinctions also exist with respect to comparing the Michigan Action to RVT's claims in the Virginia Action for breach of the SPA (Count I). There is no "identity of the cause[s] of action" between the two lawsuits. As for the breach of the SPA claim in the Michigan Action, under Michigan law[11] rescission of a contract is an equitable remedy that "returns the parties to the status quo, i.e. it places the parties in the position they occupied before the transaction in question." *McMullen v. Joldersma*, 174 Mich. App. 207, 218; 435 N.W.2d 428 (1988). It is, however, *different from breach of contract*. As the Michigan Court of Appeals stated in *Adell Broadcasting v. Apex Media Sale*, 269 Mich. App. 6, 13-14; 708 N.W.2d 778 (2005):

> Failure of consideration warranting rescission is different from, and greater than, a mere breach of contract warranting an action for damages… 'Rather rescission is permissible when there is failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated.'

---

[11]   The choice of law provision in the SPA provides that it shall be construed under the laws of the State of Michigan.

*Id.* Further, rescission requires the party claiming it to show that equity requires that the parties be returned to the status quo. *Lash v. Allstate Ins. Co.*, 210 Mich. App. 98, 102; 532 N.W.2d 869 (1995). "Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo." *Id.* (citing *Cunningham v Citizens Ins. Co. of America*, 133 Mich. App. 471, 479; 350 N.W.2d 283 (1984)).

In the Virginia Action, RVT affirms the SPA and seeks damages for Shafi's breach of it. Under principles of *res judicata*, dismissal of the rescission claim does not preclude a claim for money damages for breach.

Shafi appears to suggest that Braintech should nonetheless have brought all of its claims at the time it brought its original recission action merely because it knew of such claims and "could have" brought them as part of the Michigan Action. *See* Br. Supp. Mot. Dismiss at 11. In that regard, Shafi ignores that there is no compulsory joinder rule under federal law. Under the federal rules, "[j]oinder of claims is permissive, not compulsory." 4-18 Moore's Federal Practice – Civil § 18.02. "Nothing in the claim joinder rule requires all claims to be asserted by a party." *Id.* (citing *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987) ("That [plaintiff] could have joined the suits does not necessarily mean she was required to do so, however. The decision to bring separate actions was a tactical choice allowed by the Federal Rules of Civil Procedure; Rules 18(a) and 20(a) refer only to permissive joinder, at the party's option.")).

In summary, even if the Court were to determine that Braintech's equitable recission claims in the Michigan Action were dismissed with prejudice (and Plaintiffs contend they were not), *res judicata* does not bar Plaintiffs' claims in this action because there is no identity of the

causes of action between Plaintiffs' claims in this action and Braintech's original equitable claim for recission of the SPA in the Michigan Action.

### C. Plaintiffs' Claims in This Action Are Not Compulsory Counterclaims to Shafi's Claims In the Michigan Action.

Shafi erroneously contends that the claims in the Virginia complaint are compulsory counterclaims to *his* counterclaims in the Michigan Action.[12]   Compulsory counterclaims are governed by Rule 13 of the Federal Rules of Civil Procedure.  Rule 13 provides:

> A pleading must state as a counterclaim any claim that - at the time of its service - the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence *that is the subject matter of the opposing party's claim*; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a)(1) (emphasis added).  *See also, Sue & Sam Mfg. Co. v. B-L-S Constr. Co.,* 538 F.2d 1048, 1052-53 (4th Cir. 1976) (setting forth four tests for determining if a counterclaim is compulsory).

Contrary to Shafi's assertions at page 10 of his supporting brief, it is of no moment that Plaintiffs may have known about their claims at the time Shafi filed his Second Amended Counterclaim against Braintech and Weidinger. Unless the claims arise out of the same transactions or occurrences that form the subject matter of his claims in the Michigan Action, the claims are not compulsory and Plaintiffs were not required to assert them in response to Shafi's claims.

Moreover, Shafi embraces an improperly expansive approach with respect to the "transaction or occurrence" requirement of Rule 13, relying ostensibly on background facts and

---

[12] Shafi has not identified cases from the Fourth Circuit or this Court addressing the procedural propriety of filing a counterclaim to a counterclaim, and Plaintiffs are not aware of any.

not the operative facts that form "the subject matter of" his own counterclaims in the Michigan Action. *See* Br. Supp. Mot. Dismiss at 3-5. A proper examination of Shafi's claims against Braintech and Weidinger in the Michigan Action illustrates that the Virginia claims do not arise out of the same transactions or occurrences.

### 1. Weidinger's Virginia Claims Bear No Legal Relationship to Shafi's Michigan Claims Against Him.

As discussed *supra* Section II.B, Shafi's counterclaims against Weidinger in the Michigan Action arise out of *alleged precontractual representations* made *by Weidinger to Shafi* in 2008 with respect to *the value of the overall transaction to Shafi,* in order to allegedly induce Shafi to consummate the Share Purchase Agreement and related agreements. Focusing on these allegedly fraudulent precontractual statements, which is the proper analysis under Rule 13(a), it is clear that Weidinger's claims in the Virginia Action for disparagement and defamation (Counts III and IV), do not arise from the same occurrences.

Weidinger's claims in the Virginia Action are based upon statements made *by Shafi* (not Weidinger) *regarding Weidinger* (not the value of the SPA transaction) *to various of Weidinger's business contacts* (not Shafi) in the vision-guided robotics and machine vision system industries in 2008, 2009, 2010, and continuing today. *See* First Am. Compl. ¶¶ 68-73. For example, long after the deal closed, Shafi made statements to various of Weidinger's business acquaintances that Weidinger fraudulently induced him into selling his companies, committed a fraud on him, had done a great injustice to him, and did not hold to his agreements. *See id.* ¶ 71. Shafi made such statements to Microscan, PDSI, and ABB. *See id.* ¶ 72.

When viewed side-by-side, it is clear that Weidinger's Virginia claims are not compulsory counterclaims to Shafi's now dismissed Michigan claims against him. The claims

involve different issues of fact (which are distinctly different temporally) and a different body of evidence.

Shafi erroneously asserts that Weidinger's status as an "Affiliate" under the Non-Competition Agreement somehow renders his common law defamation claim compulsory to Shafi's fraud-based claims in the Michigan Action.  Br. Supp. Mot. Dismiss at 10.  As previously discussed, none of Shafi's claims against Weidinger in the Michigan Action relate to or arise out of the Non-Competition Agreement or Shafi's post-employment defamatory statements forming the subject matter of Weidinger's defamation claims against Shafi.  And Shafi fails to provide any explanation as to how Weidinger's status as an "Affiliate" under the Non-Competition agreement changes these indisputable facts.

Moreover, to the extent that Weidinger's claims are based upon statements made by Shafi after mid-August 2009, and continuing through today, such claims are not compulsory counterclaims to Shafi's Michigan Action.  By its plain language, Rule 13(a) only bars a claim that existed "at the time of its service" from subsequent litigation.  Shafi filed his Second Amended Counterclaim in the Michigan Action on July 22, 2009.  Therefore, to the extent that Weidinger's claims are based upon disparaging and defamatory statements made after mid-August 2009, when Weidinger's Answer was due, they cannot be compulsory to Shafi's Michigan claims.

As a matter of law, Weidinger's claims in the Virginia Action were not compulsory Counterclaims to Shafi's Counterclaims in the Michigan Action.

### 2.   RVT's Virginia Claims Bear No Legal Relationship to Shafi's Michigan Claims Against Braintech

Shafi's compulsory counterclaim arguments similarly fail with respect to RVT's claims in the Virginia Action.  As discussed above, Shafi's claims against Braintech in the Michigan

24

Action arise from: (1) Braintech's alleged breach of his Employment Agreement by terminating him without good cause and failing to pay him his contractual severance and (2) alleged pre-contractual representations made by Weidinger to Shafi regarding the value of the overall SPA transaction in order to fraudulently induce Shafi into consummating the transaction. None of RVT's claims in this action involve the same conduct or subject matter.

RVT's disparagement and defamation claims (Counts II and III) are based upon false statements made by Shafi about Braintech and RVT to others in the vision-guided robotics and machine vision system industries. *See* First Am. Compl. ¶¶ 68-74, 80-102. RVT's claim for breach of the SPA relates to express representations and warranties made *by Shafi to Braintech* in the Share Purchase Agreement. *See id.* ¶¶ 25-26, 32-39, 81-84. *See id.* ¶¶ 86-99. And RVT's unfair competition claim (Count IV) arises out of false and misleading statements made by Shafi on his new company's website and improper usurping of RVT's goodwill. *See id.* ¶¶ 53-58, 104-117. Finally, RVT's claim for breach of the Non-Competition Agreement is premised entirely upon Shafi's post-employment competitive activities for his new company, Advenovation, and Braintech's competitor, Aptura. *See id.* ¶¶ 49-67, 83-84. Shafi's post-employment competitive activities have no relation to, and do not arise out of, either the allegedly fraudulent precontractual statements made by Weidinger forming the subject matter of Shafi's Michigan claims or his Employment Agreement.

Shafi is simply wrong in his contention that the Employment Agreement and the Non-Competition Agreement inextricably are linked. Br. Supp. Mot. Dismiss at 8-9. Paragraph 12(g) of the Employment Agreement, relied upon by Shafi, merely reinforces that if Braintech pays Shafi a severance, the 3 year/1 year restriction period in the Non-Competition Agreement

25

applies, regardless of whether Shafi is terminated for good cause.  *See* Mot. Dismiss, Ex. G, Employment Agreement, ¶ 12(g)(ii).

The only issues related to Shafi's Breach of Employment Agreement claim in the Michigan Action that are even arguably relevant to the Virginia breach of Non-Competition Agreement claim are (i) whether Shafi was terminated for good cause and (ii) whether Braintech paid Shafi a severance, as those issues may determine the applicable non-competition period. Those two issues, however, do not inextricably link either the agreements or the claims based on breaches of the agreements.  And, to the extent there are common factual issues between these two claims, *at most*, concepts of issue preclusion may apply to bar relitigating *those specific factual issues*.  The existence of a handful of common factual issues, however, does not convert an otherwise permissive claim under Rules 18 and 20 to a compulsory counterclaim under Rule 13.

In summary, Plaintiffs' claims against Shafi in this action do not arise out of the same transactions or occurrences that are the subject matter of Shafi's claims in the Michigan Action and accordingly, are not compulsory counterclaims to Shafi's claims in Michigan.

### D.    Shafi's Substantive Arguments Seeking Dismissal of Plaintiffs' Claims Fail.

Each of Shafi's substantive arguments for dismissal fail.  As an initial matter, it should be noted that Shafi does not attack the claim for Breach of the Share Purchase Agreement Warranties (Count I) on grounds other than *res judicata*, Rule 13, and improper venue. Therefore, because those arguments fail, Count I properly states a cognizable claim. Shafi likewise proffers no additional substantive legal argument with respect Plaintiffs' Breach of Non-Competition Agreement Claim (Count II).  Therefore, Count II properly states a cognizable claim.

Plaintiffs' properly have pled the defamation claim (Count III), which is based upon Shafi's admissions during his deposition in the Michigan Action.  For example, Plaintiffs allege that:

> Shafi's disparaging comments include, without limitation, that Weidinger fraudulently induced him into selling his companies, stole his companies and had committed a fraud on him, had done a great injustice to him, and did not hold to his agreements, and that Braintech was in a poor situation, had technical and financial issues and problems, and did not hold to its agreements.

First Am. Compl. ¶¶ 86, 95; Ex. 14, Shafi Dep. Tr., Vol. 1 at 150-53 ("The poor situation of Braintech.  Its inability to hold its agreements.  Its breaches.");  Shafi Dep. Tr., Vol. 3 at 475 ("I said that I was fraudulently induced into selling my companies, that I was defrauded, and that I was done a great injustice . . . ."); *Id.* at 478 ("[Y]ou've told people that Mr. Weidinger defrauded you?  A. Yes.  I do."); *Id.* at 480 ("Yeah.  I say he defrauded me.").

Unlike the statements dismissed in *Gibson v. Boy Scouts of Am.,* 360 F. Supp. 2d 776 (E.D. Va. 2005), cited and relied upon by Shafi, Plaintiffs' allegations are not made "upon information and belief," nor are they couched in terms of being "similar" to other statements, and therefore, *Gibson* is clearly distinguishable. *Kidd v. TA Operating, LLC,* 2010 U.S. Dist. LEXIS 25659 (Mar. 8, 2011), cited on page 25 of Shafi's supporting brief, is similarly distinguishable in that the complaint in *Kidd* "did  not even include a general summary of the purportedly offensive language."  Moreover, as this Court has recognized, *Iqbal* and *Twombly* require that the complaint "allege facts that, if true, plausibly satisfy each element of the claims for which relief is sought."  *See Dynamis, Inc. v. Dynamis.com*, 2011 U.S. Dist. LEXIS 49171 at *13 n.7 (E.D. Va. Apr. 27, 2011).  Plaintiffs have met this requirement.  *See* First Am. Compl, Count III.  In the event the Court determines that Plaintiffs' allegations regarding Shafi's defamatory statements require more specificity, which is easily remedied by block quoting Shafi's deposition

testimony in the Complaint, Plaintiffs request to leave under Rule 15 to so amend their Complaint.

Shafi's contention that Plaintiffs' unfair competition claim fails as a matter of law because Virginia law only recognizes claims for palming off is misplaced. Applying a proper choice of law analysis, Michigan law should apply to Plaintiffs' claim. As a tort, unfair competition is governed by the rule of *lex loci delicti* – the law of the place of the wrong. *Jones v. R.S. Jones & Assoc.*, 246 Va. 3 (1993). The place of the wrong "is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of that last event." *Insteel Indus. v. Costanza Constr. Co*., 276 F. Supp. 2d 479, 486 (E.D. Va. 2003). Advenovation is conducting business in Michigan and is also where Advenovation is conducting its marketing efforts. Based on these factors, Michigan is the *lex loci delicti* and Michigan law applies.

Plaintiffs properly have alleged a claim of unfair competition under Michigan law. Michigan's common law of unfair competition is broader than Virginia's common law and prohibits all unfair and unethical trade practices that are harmful to one's competitors or to the general public and encompasses any conduct that is fraudulent or deceptive and tends to mislead the public. *See Good Housekeeping Shop v Smitter*, 254 Mich. 592 (1931); *Clairol, Inc. v. Boston Disc. Ctr., Inc.*, 608 F.2d 1114, 1120 (6th Cir. 1979).

Moreover, to the extent that the Court disagrees and applies Virginia law, Plaintiffs' unfair competition claim nonetheless survives because Plaintiffs essentially allege that through his false and misleading statements, Shafi is palming off Advenovation's software and services as Reliabot software and services (which are now owned by RVT). *See* Ex. 1, 1st Am. Compl. ¶¶ 53-58, 110, 112.

28

As set forth above, Plaintiffs properly have alleged the elements and supporting facts to state cognizable claims for breach of the SPA, breach of the Non-Competition Agreement, Defamation and Unfair Competition.

### E.   Shafi's Motion for Sanctions Should be Denied.

As discussed in detail above, Plaintiffs properly filed this action in this Court and, therefore, Shafi's motion for sanctions under 28 U.S.C. § 1927 is without merit.

Section 1927 focuses on the conduct of the litigation, not on its merits, and requires a showing that the non-moving party unreasonably and vexatiously has multiplied the proceedings. *See* 28 U.S.C. § 1927; *see also  Debauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (vacating sanctions under § 1927); *Royal Ins. v. Lynnhaven Marine Boatel, Inc*., 216 F. Supp. 2d 562, 566-67 (E.D. Va. 2002) (denying sanctions where counsel made arguable issue of law and did not multiply proceedings).  Specifically, § 1927 is concerned with limiting abuse of court processes and is "indifferent to the equities of a dispute and to the values advanced by the substantive law" and requires a finding of bad faith as a precondition to the imposition of fees.  *Debauche,* 191 F.3d at 512 (distinguishing § 1927 sanctions from Rule 11 sanctions for filing a frivolous complaint);  *Brubaker v. City of Richmond,* 943 F.2d 1363, 1382 n.25 (4th Cir. 1991).  And an award of attorneys' fees under § 1927 requires conduct even "more egregious" than behavior sanctionable under Rule 11.  *Royal Ins.*, 216 F. Supp. 2d at 566.

Plaintiffs properly exercised their right to file this action in this Court.  This is particularly true because in the Michigan Action discovery had been closed for five months, a summary judgment motion had been pending four months, a settlement conference was scheduled to take place in nine days and trial was scheduled to start in six weeks.  Apparently, Shafi would have preferred that Plaintiffs assert their claims in the pending Michigan Action or file a new lawsuit in Michigan. That Plaintiffs determined to proceed in Virginia does not

"multiply" the proceedings -- the filing and prosecution of these claims was inevitable. Plaintiffs simply chose to file these claims in a forum, this Court, for which Shafi has manifested his preference to avoid.

Plaintiffs' choice of forum was and is proper and Shafi's request for sanctions under 28 U.S.C. § 1927 should be denied.

## IV.    <u>CONCLUSION</u>

Based upon the foregoing, Shafi's motions to dismiss or in the alternative to transfer venue and for sanctions should be denied in their entirety.

Respectfully submitted,

s/ H. Jonathan Redway
H. Jonathan Redway (Va. Bar. No. 42189)
jredway@dickinsonwright.com
DICKINSON WRIGHT PLLC
1875 Eye St, N.W., Suite 1200
Washington, D.C.   20006
Tel:   202.659.6946
Fax:  202.659.1559

Thomas G. McNeill (MI Bar No. P36895)
TMcNeill@dickinsonwright.com
Michelle L. Alamo (MI Bar No. P60684)
MAlamo@dickinsonwright.com
DICKINSON WRIGHT PLLC
500 Woodward Ave, Suite 4000
Detroit, Michigan 48226
Tel:   313.223.3500
Fax:  313.223.3598

Dated:  June 6, 2011

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 6, 2011, the foregoing PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE AND FOR COSTS was electronically filed with the ECF of the Eastern District of Virginia and served upon counsel of record via electronic notice.

s/Michelle L. Alamo