**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**(Alexandria Division)**

| | |
|---|---|
| **ROBOTIC VISION TECHNOLOGIES LLC, a Nevada Limited Liability Company, and FREDERICK WEIDINGER, an individual,** )<br>)<br>)<br>)<br>) | |
| **Plaintiffs,** )<br>) | |
| **vs.** ) | **Case No. 1:11cv250 (TSE/TRJ)** |
| ) | |
| **ADIL SHAFI, an Individual,** )<br>) | |
| **Defendant.** )<br>) | |

**AMENDED REPLY OF DEFENDANT ADIL SHAFI TO**
**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**TO TRANSFER VENUE AND FOR COSTS**

## I.     INTRODUCTION

Plaintiffs fail to demonstrate that this case should be distinguished from the case pending in Michigan ("the Michigan Case").   At best, the distinction Plaintiffs offer is merely that the cases are distinct in time.  As demonstrated herein, this is not enough to overcome the doctrine of res judicata.

## II.     ARGUMENT

### Point 1

### PLAINTIFFS FAIL TO SHOW THIS CASE SHOULD NOT BE DISMISSED

RVT's contention that the "at law" claims for damages in Virginia are new and different from the equitable claims for rescission of the Share Purchase Agreement asserted in Michigan is frivolous and disposed of by applying the "modern" election of remedies doctrine.   Whether federal common law, Michigan law or Virginia law applies, the outcome is the same.   The damages claim filed here *could* have been filed in the Michigan case and this ends the inquiry.

> …At common law, the [election of remedies] doctrine prevented a plaintiff from pleading alternative remedies or alternating between remedies once suit had commenced. *Olympia Hotels Corp. v. Johnson Wax Development Corp*., 908 F.2d 1363, 1371 (7th Cir. 1990). With the adoption of more flexible approaches to pleading and procedure and the merger of law and equity, however, most jurisdictions today have abandoned this dimension of election of remedies doctrine. *See Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 893 (Pa. 2007). Under the modern view, apart from issues of *res judicata* or where some element of estoppel is present, a conclusive election typically is made only where a suit has advanced to judgment. *See Olympia Hotels*, 908 F.2d at 1371 (citations omitted).

*Homeland Training Center LLC v. Summit Point Auto. Research Center*, 594 F.3d 285, 293 (4th Cir. 2010).  *Dunston v. Huang*, 709 F. Supp.2d 414, 419-420 (E.D.Va 2010) (holding that the "transaction or occurrence" test should guide the analysis).

Michigan law is the same:

> Modern rules of civil procedure, the election of remedy doctrine expressed in the current legal periodicals cited earlier, and the Supreme Court's decision in *Gruskin v Fisher, 405 Mich 51; 273 NW2d 893 (1979)*, lead us to conclude that plaintiff may simultaneously pursue all of his remedies against the sellers and other defendants herein regardless of legal consistency, *so long as plaintiff is not awarded double recovery*. [emphasis in original].

*Walraven v. Martin*, 123 Mich. App. 342, 348; 333 N.W.2d 569, 572 (1983).  Virginia law is no different.  "Having failed to claim any of these damages in the former action [in chancery], the plaintiff is now estopped to file another action [for damages]."  *Espinosa v. Community Physicians, Inc*., 11 Va. Cir. 525,527 (1983); *Accord*, *Diamond State Iron Company v. Rarig*, 93 Va. 595, 25 S.E. 894 (1896).

Shafi does not suggest that Braintech "should nonetheless have brought all its claims…merely because it knew of such claims…."  Response at p. 21.  Here, Plaintiffs simply ignore the doctrine of res judicata and offer an academic discussion on joinder of claims.  The test is not whether the claims were asserted, the test is whether they *could* have been asserted.  Plaintiffs rely on *Headley v. Bacon*, 828 F.2d 1272 (8th Cir. 1987).  *Headley* merely stands for the proposition that a plaintiff is not required to plead all claims against all *parties* in a single complaint.

In *Headley*, plaintiff, a female police officer, first sued the municipality which employed her for discrimination.  Prevailing in the first case, she subsequently filed suit against the individual police officers who subjected her to the harassment at issue in the first case.  In its holding, the Eighth Circuit concluded res judicata did not apply to the second case because the parties in the second suit were different than the party in the first suit.  In other words, the

transaction or occurrence was the same, but the parties were different.  This distinction is not present in this case.  The party being sued over the same transaction is one and the same.

Further attempting to elude the effect of res judicata, citing Michigan case law, Plaintiffs merely distinguish a rescission claim from a damages claim.  Response Brief at pp. 20-21.  This academic discussion also misses the point.  Michigan, Virginia and federal common law allow simultaneous assertion of inconsistent claims such as rescission and contract damage claims *in the same case on the same contract or conduct*.  However, it is black letter law that the election of one form of relief over the other precludes a second suit on the alternate theory.  "A party makes a conclusive election of remedies which will bar later resort to an inconsistent remedy when: (1) the party knows his rights, (2) has carried his case to a conclusion, and (3) has obtained a decision on the issues involved." *Hartman Plastics v. Star Int'l LTD-USA*, 1998 U.S. Dist. LEXIS 14687, Nos. Civ. A. 97-2679, 97-2734, 1998 WL 643864, at *4 (E.D. Pa. Sept. 18, 1998).

Plaintiffs offer no real opposition to the application of res judicata.  Their response concedes that Braintech certainly knew of the "at law" claims.  Braintech had Shafi in its grasp as a defendant and made a tactical decision not to assert its "at law" claims, apparently saving them for another day in another court.  This vexatious intent is exactly what the doctrine of res judicata is designed to stop.  Braintech elected to stand on its claim for rescission in the Michigan Case and having lost, neither Braintech nor its successor, RVT, may pursue an alternative remedy which could have been asserted in the Michigan Case.  There are simply no reasonable or good faith legal grounds to argue that a party may pursue serial lawsuits asserting successive inconsistent remedies based upon the same transaction.  Plaintiffs' claim that a

damages claim is preserved for a later case when only equitable relief is sought in the first case is without merit.

Plaintiffs attempt to distinguish the "transaction or occurrence" should also fail. As shown in the discussion below, the temporal distinction offered by Plaintiff does not in fact make out new claims or distinguish the claims asserted in Virginia from those asserted in the Michigan case. In addition, in this case, as in *Harnett v. Billman,* 800 F.2d 1308 (4th Cir. 1986), there is no dispute that Braintech and Weidinger knew of the claims at the time they answered Shafi's Second Amended Counterclaim. The plaintiff in *Harnett,* like Braintech and Weidinger, used discovery in the Michigan Case to learn the details of the present claims. Weidinger, Braintech and its successor, RVT, are "therefore subject to the general principle that the judgment in [the Michigan Case] extinguishes any claims that could have been raised in that litigation and that are, for res judicata purposes, the same claims as those advanced in the earlier case." *Id.,* at 1314.

Plaintiff in *Harnett,* like Plaintiffs here, protested that the claims were not for "identical injuries and remedies that were the subject of *Harnett I*…." The *Harnett* decision responded: "The rule of claim preclusion we apply, however, asks only if a claim made in the second action involves a right arising out of the same transaction or series of connected transactions that gave rise to the first action. *Id*., at 1314.

Application of the *Harnett* holding to the facts of this case leaves little doubt that the claims pleaded here are precluded:

> To decide this, we measure the scope of "transaction or series of connected transactions" by considering pragmatic factors such as common origin and relation, as well as whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities. *See Restatement (Second) of Judgments* § 24(2) (1982). Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief. *Id.* comment c.

6

All roads lead back to the August 12, 2008 transaction where Braintech acquired Shafi's companies.  Absent that transaction, there is no claim in either case.  There are no legitimate grounds to distinguish the claims in this case from the Michigan case.

**Point 2**

**WEIDINGER FAILS TO DEMONSTRATE HIS CLAIMS WERE NOT COMPULSORY COUNTERCLAIMS IN THE MICHIGAN CASE**

Weidinger's effort to escape the effect of Rule 13 is equally unavailing.  First, the Non-Competition Agreement was an exhibit to and incorporated the SPA.  In the Michigan Case, Braintech sought rescission of both, and Shafi alleged he was fraudulently induced into signing both.  *See* Shafi's Second Amended Counterclaim, Exhibit D to Shafi's moving brief, ¶ 116.  Here, Plaintiffs claim the alleged defamatory statements breach the Non-Competition Agreement.  Amended Complaint ¶ 100.

Weidinger pronounces that the alleged defamation claims are temporally discrete from the "transaction" represented by the SPA and the subsequent employment of Shafi by Braintech.  This is a superficial distinction without merit.  In the Michigan Case, Plaintiffs allege Shafi made defamatory statements that "Weidinger fraudulently induced him into selling his companies, stole his companies, had committed a fraud on him, had done a great injustice to him, and did not hold to his agreements, and that Braintech was in a poor situation, had issues and problems both technically and financially, and did not hold to its agreements".  Amended Complaint ¶ 95.  Regardless of whether such statements were defamatory, all were originally written into Shafi's Second Amended Counterclaim (bullet points refer to Shafi's Second Amended Complaint):

"Weidinger fraudulently induced him into selling his companies"

- Count III asserted a claim for fraud  in the inducement.
- Count IV asserted a claim for securities fraud

[Weidinger] "stole his companies"

- ¶ 155 alleged "as part of an elaborate and complicated scheme to commit theft of corporate property, Weidinger and Braintech made a series of fraudulent misrepresentations and omissions".

"[Weidinger] did not hold to this agreement"

- Section F, paragraphs 65 through 97 detail how Braintech and Weidinger "Never Intended to Honor the Agreements."

"Braintech was in a poor situation, had issues and problems both technically and financial"

- Weidinger "personally invested millions of dollars in Braintech in order to keep it afloat." ¶ 93
- "Without the technology, customers, markets, sales blueprint and know-how of [Shafi Inc. and Shafi Innovation Inc.], it would have taken Braintech years to reach the market position it now has by virtue of the theft of corporate property." ¶ 94

Under either Fourth Circuit or Sixth Circuit precedent, the operative facts of whether or not fraud was committed is central to both the defamation claims and Shafi's claims against Weidinger in the Michigan Case.

Federal case law abounds with fact patterns where post-transaction defamatory statements were deemed compulsory counterclaims subject to dismissal when filed as a new case. *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249 (9th Cir. 1987)(Prudential sued former employee for breach of a non-competition agreement in first suit, second suit by employee for defamation was dismissed because defamation claim was compulsory counterclaim); *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir. 1966) (defendant's counterclaim, seeking to recover the price defendant paid for allegedly worthless oil securities, was logically related to plaintiff's claim that defendant had slandered him regarding sales of oil securities and therefore compulsory); *Sutton v. Sutton*, 71 F. Supp. 2d 383, 390 (D.N.J. 1999) (federal defamation suit involved same transaction as instant RICO suit and would have been res judicata

if defamation suit would have proceeded to final judgment); *Hexagon Packaging Corp. v. Manny Gutterman & Assocs.*, 2000 U.S. Dist. LEXIS 2026 (N.D Ill 2000)(where first suit alleged defamation and defendants later sued for fraud, defamatory statements in first case related to same transaction as fraud claims in second case and were, therefore, compulsory counterclaims).

In a remarkably similar case, the district court for the Southern District of West Virginia, relying on Fourth Circuit precedent, dismissed a second suit for defamation filed by the defendant in the first case where the defamation claims related to an underlying contract at issue in the first case. *Banner Industries of NY v Samson*, 830 F. Supp. 325 (S.D.W.Va. 1993).  On October 30, 1992, defendant Samson filed a complaint against Banner Industries alleging fraud and breach of contract.  On November 16, 1992 Samson published letters claiming Banner made deliberate misrepresentations in connection with certain business transactions.  Banner answered the complaint on November 25, 1992.  Samson's complaint was amended on January 14, 1993 and Banner answered the amended complaint on January 26, 1993.  Banner never asserted a counterclaim.

Banner later filed suit against Samson in federal court for libel based on the November 16, 1992 letters written by Samson.  *Id*.  Applying the factors enumerated in *Sue & Sam Mfg. Co. v. B-L-S Constr. Co*. 538 F.2d 1048 (4th Cir. 1976), the district court found the defamation claim to be a compulsory counterclaim in the first case and dismissed.  First, "[t]he claim and counterclaim contained a similarity of factual and legal issues and both may be supported or refuted by substantially the same evidence." *Id* at 327.  Second, both parties pleaded the element of "falsity" in their complaints.  "The proof, or failure of such, of the alleged material false statements in [the first action] will bear heavily on the fate of the [second] libel action." *Id* at 327.  Third, even though both actions were not "identical and that some evidence will be offered

in one action and not the other … [the] third element [is] satisfied. *Id* at 327.  As to the fourth element,

> …the pleadings demonstrate that the parties' disputes in the state and federal actions essentially arise from the souring of their business relationship. Allowing both of these actions to proceed in parallel fashion would result in not only the duplication of evidence and effort but also wasted judicial resources.

The court dismissed the second filed case.  *Banner Industries* is squarely on point.  Both Weidinger and Braintech knew of the alleged defamatory statements and the alleged unfair competition engaged in by Shafi with his new company, Advenovation, at the very same time they answered the Second Amended Counterclaim in the Michigan Case.  This is a point Weidinger does not dispute.  The claims involved the same soured business relationship.  The same evidence supports or refutes the claims.  The Non-Competition Agreement is at issue in both cases.

Weidinger responds that defamation and unfair competition was committed in 2009 and 2010.  But this fails as well.  Here, the claim is made that such later conduct enables Weidinger and RVT to file a new case.  It does not.  Had the claims been timely raised in the responsive pleadings in the Michigan Case, as they were legally required to have been, then anything occurring in 2009 and 2010 would also be the subject of the Michigan Case which goes to trial on June 28, 2011. The mere fact that the alleged conduct straddled the time before and after  a responsive pleading does not give rise to a new cause of action.

## Point 3

### <u>THERE IS NO REASON TO ALLOW VENUE IN VIRGINIA</u>

Plaintiffs' venue argument is specious.  Other than Paragraphs 4 and 9 of the Amended Complaint, which are the jurisdictional paragraphs stating that Weidinger is a citizen of Virginia,

the Complaint utterly fails to make any nexus between the facts at issue and Virginia.  While

Paragraph 12 alleges that Shafi conducted business in Virginia "related to the claims in the

matter," Plaintiffs' response now concedes that none of the business conducted by Shafi in

Virginia is related to any of the claims asserted here.  Plaintiffs disingenuously focus on Shafi's

post-employment activities to avoid the consequences of the application of res judicata, but for

the purpose of venue, they ask the court to consider pre-employment conduct unrelated to the

claims asserted in Virginia.

To suggest it is a permissive clause, Plaintiffs isolate one word ("a") in one sentence of a

multi-paragraph provision in the Non-Competition Agreement entitled "Governing Law;

Jurisdiction; Venue and Waiver of Jury Trial.  This section states:

8.    Governing Law; Jurisdiction; Venue; Waiver of Jury Trial

(a)    This Agreement will be construed, enforced and governed by the laws
of the State of Michigan without regard to its conflicts of law provisions.

(b)    The parties agrees that any legal action or other legal proceeding
arising out of or relating to this Agreement may be brought in the state or federal court of
proper jurisdiciton in the State of Michigan (or in any court in which appeal from such
courts may be taken).  The parties:

(i)    agree that any state and federal court in the State of Michigan
will be deemed to be a convenient forum;

(ii)    after valid service of process has been effected, agrees not to
assert (by way of motion, as a defense or otherwise), in any such legal proceeding
commenced in any state or federal court in the State of Michigan, any claim that the party
is not subject to personal jurisdiction of such court, that such legal proceeding has been
brought in an inconvenient forum, that the venue of such proceeding is improper or that
this Agreement may not be enforced in or by such court;  …

The contention that use of the word "a" in Section 8(b)(i) somehow changes the overall intent to

a permissive venue clause is meritless.  This section of the Non-Competition Agreement shows a

clear intention that Michigan was the one and only place where litigation could be commenced.

The first time out of the gate Braintech got it right, which gets to the second point that makes Plaintiffs' reliance on *IntraComm* irrelevant.

Before the court in *IntraComm, Inc v. BAE Systems Information Tech., Inc.*, 492 F.3d 285 (4th Cir. 2007) were "the parties" who had agreed to the venue provision at issue. By contrast, this Court only has one party to the agreement before it, Shafi. Neither Plaintiff is a party to the Non-Competition Agreement. The other party who had any stake in the venue provision, Braintech, no longer exists. This Court may infer that when Braintech filed the Michigan Case, it did so knowing full well that it had negotiated a forum selection clause making Michigan the only place where litigation could commence. This brings the issue full circle. RVT is a mere successor due to its purchase at auction of Braintech's assets. Stripped bare of the internal inconsistencies in their venue and res judicata contentions, along with their concession that the *lex loci* of the claim is solidly in Michigan, there is no reason to respect the Plaintiffs' choice of venue, merely and solely because Plaintiffs reside in this district.[1]

Finally, it is now apparent that the threat to Braintech's, now RVT's, business from Shafi is the motivating factor for the vexatious filing of this case in Virginia on the eve of trial in the Michigan Case. At the time Braintech and Weidinger answered Shafi's Second Amended Counterclaim they did not see how Shafi's activities, either personally or with Advenovation, posed any threat to Braintech, and they chose to stand on their rescission claims. The response to Shafi's motion to dismiss now concedes what Shafi had argued in the first instance in the Michigan Case. Braintech was a dying company desperate for access to sales expertise and new

---

[1]     Plaintiffs spend considerable time focusing on an Order in the Michigan case which addressed service of process and filing of responsive pleadings in this case. Plaintiffs claim Shafi or his counsel violated the order and such violation supports venue in Virginia. Shafi disputes this contention, but even if his attorney violated the order, Plaintiffs' claim that Shafi should be "punished" by suffering venue in Virginia is frivolous. Any such "punishment" should be meted out by Judge Roberts (in Michigan), not this Court.

markets offered by Shafi. Braintech and Weidinger failed to empower Shafi to move the business of Braintech forward. Instead, Weidinger's ego got in the way, which ultimately led to Shafi's firing. Without Shafi, Braintech was doomed to fail and fail it did.

Weidinger was left to pick up the pieces and he did so with RVT. However, Weidinger now knows from deposition testimony of Shafi that Shafi has returned to the vision guided software for robots market and is successful. RVT and Weidinger are ill equipped to compete with Shafi in the marketplace and have thus chosen to file suit in a forum 500 miles away from the contractually agreed forum in order to cause maximum financial harm to Shafi. By not asserting the claims filed here in the Michigan Case, Weidinger and Braintech successor, RVT, made a tactical decision to stand on their claims for rescission when clearly all of the theories asserted in this case were known to Braintech and Weidinger at the time they answered Shafi's Second Amended Complaint. This is why this case must be dismissed.

**DATED: June 14, 2011**                    **Respectfully submitted,**

                                            _____/s/_____
                                            Michael S. Lieberman (VSB #20035)
                                            Stacey R. Harris (VSB #65887)
                                            *Counsel for Defendant Adil Shafi*
                                            **DIMUROGINSBERG, PC**
                                            908 King Street, Suite 200
                                            Alexandria, Virginia  22314
                                            Phone: (703) 684-4333
                                            Fax: (703) 548-3181
                                            E-mails: mlieberman@dimuro.com;
                                            sharris@dimuro.com

James P. Murphy, *admitted pro hac vice*
*Counsel for Defendant Adil Shafi*
**BERRY MOORMAN, PC**
535 Griswold, Suite 1900
Phone: (313) 223-1605
Fax: (313) 496-1300
E-mail: murph@berrymoorman.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system, which will send notification of such filing (NEF) to the following:

H. Jonathan Redway (Va. Bar. No. 42189)
DICKINSON WRIGHT PLLC
1875 Eye St., N.W., Suite 1200
Washington, D.C.  20006
Phone: (202) 659-6946
Fax: (202) 659-1559
E-mail: jredway@dickinsonwright.com

AND that I further caused a courtesy copy to be e-mailed to:

Thomas G. McNeill, Esq.
Michelle L. Alamo, Esq.
DICKSINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit Michigan 48226
Phone: (313) 223-3500
Fax. (313) 223-3598
E-mails: TMcNeill@dickinsonwright.com; MAlamo@dickinsonwright.com

                                        /s/
                              Michael S. Lieberman (VSB #20035)
                              Stacey R. Harris (VSB #65887)
                              *Counsel for Defendant Adil Shafi*
                              **DiMuroGinsberg, PC**
                              908 King Street, Suite 200
                              Alexandria, Virginia  22314
                              Phone: (703) 684-4333
                              Fax: (703) 548-3181
                              E-mails: mlieberman@dimuro.com;
                              sharris@dimuro.com